# United States Court of Appeals
## For the First Circuit

No. 03-1578

PAUL COZZA,

Plaintiff, Appellee,

v.

NETWORK ASSOCIATES, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Oberdorfer,[*] Senior District Judge.

Clifton T. Hutchinson, with whom David J. Schenck and Hughes & Luce, LLP, were on brief, for appellant.
Joseph L. Stanganelli, with whom Anthony A. Scibelli and Scibelli and Whiteley, LLP, were on brief, for appellee.

March 22, 2004

---

[*]   Of the United States District Court for the District of Columbia, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Defendant-appellant Network Associates, Inc. ("NAI") appeals the district court's denial of its Motion for Reconsideration of Motion to Compel Arbitration.  After careful review, we affirm.

## I.  Background

In 1993, plaintiff-appellee Paul Cozza ("Cozza") and Datawatch (subsequently acquired by NAI) entered into an Antiviral Scan Enhancement License Agreement (the "License") for the use of Cozza's patented scan enhancement technology.  Disputes arose over royalties and, on August 26, 1999, Cozza and NAI entered into a Settlement Agreement (the "Settlement"), which involved, inter alia, a payment to Cozza for a license to use his technology until December 31, 2001, after which NAI was to remove Cozza's technology from its products.

The License, which contained a clause agreeing to arbitrate "any dispute or controversy regarding the subject matter of this Agreement," terminated on December 31, 2001.  The Settlement, which contained no arbitration clause, has been in effect since 1999.

On June 6, 2002, Cozza brought this diversity action against NAI for breach of the Settlement, fraud, and other state law claims, alleging that NAI failed to remove Cozza's technology from products that it continued to sell, despite the Settlement's prohibition of any further sales after December 31, 2001.  On

-2-

September 6, 2002, NAI filed a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), arguing that the controversy was governed by the arbitration clause in the License. On October 17, 2002, the district court denied NAI's motion, concluding that, regardless of whether the License's arbitration clause survived the License's termination, the complaint did not assert any breach of the License, and because Cozza had made binding representations that he had not, and would not, assert any claims under the License, the arbitration clause did not apply and Cozza could not be compelled to submit to arbitration.

NAI did not appeal the denial of the motion to compel arbitration, despite the FAA's explicit provision for interlocutory appeals of such denials. 9 U.S.C. § 16(a)(1)(B).

Discovery ensued and proceeded contentiously. After a failed mediation attempt in February 2003, NAI deposed Cozza on March 13 and 14, 2003. On April 7, 2003, in response to various discovery motions, the district court allowed NAI's motion for a protective order, subject to certain conditions, and allowed, in part, Cozza's motion to compel supplemental answers to interrogatories.

On April 11, 2003, NAI filed the "Motion for Reconsideration of Motion to Compel Arbitration" at issue in this appeal, alleging that Cozza's March deposition had revealed that

Cozza's claims did in fact involve the License in such a way as to bring them within its arbitration clause, despite his prior representations to the contrary. The district court summarily denied the motion on April 22, 2003.

On April 25, 2003, NAI filed a Notice of Appeal, as well as an emergency motion to stay the district court proceedings pending appeal. The district court granted the motion to stay. On April 30, 2003, Cozza filed a motion to strike the Notice of Appeal and to lift the stay, arguing that such an appeal had to be filed within thirty days of the district court's October 17, 2002, order denying NAI's initial motion to compel arbitration and that NAI cannot now appeal either the October 2002 order or the denial of its motion for reconsideration. On May 21, 2003, this court denied Cozza's motion and directed the parties "to address [the] court's jurisdiction in their briefs, including whether appellant's motion for reconsideration below can properly be construed as a renewed motion to compel arbitration based on newly discovered evidence, and whether an interlocutory appeal would lie from the granting or denial of such a motion."

NAI argues that the plain language of § 16(a)(1)(B) of the FAA, which states that "[a]n appeal may be taken from an order denying a petition . . . to order arbitration to proceed," indicates that all interlocutory orders denying arbitration, including the denial of their "motion to reconsider," can be

appealed at any time before a final judgment is issued.  NAI contends that this proposed "FAA exception" comports with Congress's purpose to favor arbitration.

Cozza argues that similar reasoning has been rejected in the context of qualified immunity, where the thirty-day deadline to appeal interlocutory orders under Federal Rules of Appellate Procedure 4(a)(1) has been enforced, and appeals of orders denying reconsideration "cannot resurrect a party's expired right to contest the appropriateness of the order underlying the motion." Fisichelli v. The City Known as the Town of Methuen, 884 F.2d 17, 19 (1st Cir. 1989).  Otherwise, "Rule 4(a)(1) would be stripped of all meaning; . . . and a dilatory defendant would receive not only his allotted bite at the apple, but an invitation to gnaw at will." Id.  We begin by addressing this jurisdictional quandary.

## II.  **Analysis**

Focusing on NAI's claims of new evidence, the appealability of the motion could be contemplated within the context of Rule 60(b) motions based on newly discovered evidence. "Ordinarily, the denial of a Rule 60(b) motion is immediately appealable since there is nothing left to do in the district court."  Xerox Fin. Servs. Life Ins. Co. v. High Plains Ltd. P'ship, 44 F.3d 1033, 1038 (1st Cir. 1995).  The district court proceedings are still underway here, however, which "raises interesting questions about the appealability of a Rule 60(b)

-5-

denial in the context of an ongoing district court proceeding."
Id.

While recognizing that the novel jurisdictional issue before us raises several such interesting questions,[1] their consideration can await another day. The rule is well established in this Circuit that resolution of a complex jurisdictional issue may be avoided when the merits can easily be resolved in favor of the party challenging jurisdiction. Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 59 (1st Cir. 2003)(citing cases holding that jurisdictional inquiry is not required unless

---

[1] This court has recently expressed sympathy, in dicta, for the view of several of our sister circuits that, although nothing in the text of the FAA requires immediate appeal of interlocutory orders denying arbitration, "the failure to promptly appeal such a denial may by estoppel foreclose the demanding party's right to arbitration, although this is not automatic and depends on a showing of prejudice to the other side." Colón v. R.K. Grace & Co., 358 F.3d 1, 4 (1st Cir. 2003). The reasoning behind such a rule is that "it is wasteful to have a full trial and then determine by a post-trial appeal that the whole matter should have been arbitrated and so start again." Id. In the case before us, however, there has been no trial, and whether the discovery that occurred was sufficiently prejudicial to Cozza to warrant forfeiture is far from clear.

The issue is further complicated by NAI's claim that the second motion is based on newly discovered evidence that was not available before the expiration of the thirty-day period allowed by this rule for interlocutory appeal of his initial motion to compel arbitration. Refusing to allow an appeal of a second motion to compel arbitration based on newly discovered evidence supporting the arbitrability of the dispute potentially creates exactly the scenario a forfeiture rule seeks to avoid: a full trial followed by a determination that the matter must be arbitrated. Perhaps such a case, like Colón, "is a perfect example of why one would not employ a mechanical forfeiture rule." Id.

Article III case or controversy requirement is implicated). Here, even assuming _arguendo_ that NAI's motion can be construed as a renewed motion to compel arbitration based on new evidence and that appellate jurisdiction would exist over the denial of such a motion, the matter can be easily resolved in Cozza's favor, as the record fails to provide support for NAI's assertion that new evidence supporting arbitration emerged in Cozza's deposition.

NAI argues that all of Cozza's claims are arbitrable because they "regard" Cozza's scan enhancement technology, which NAI identifies as the subject matter of the License, and Cozza agreed in the License to arbitrate "any dispute or controversy regarding the subject matter of this Agreement." NAI alternatively asserts that the arbitration clause survived the termination of the contract, that the Settlement incorporated the License, or, if the License is not incorporated in the Settlement, precedent indicates that the settlement of an arbitrable dispute is also arbitrable.

All of these arguments were available to NAI when it brought its first motion to compel arbitration and all were argued at that time, when the opportunity to appeal the motion's denial under the FAA was undeniable. NAI implicitly acknowledges this by refraining from reiterating those arguments in the second motion and simply incorporating the first motion by reference. Whatever the merits _vel_ _non_ of NAI's argument that another interlocutory appeal should lie from the denial of a motion to compel arbitration

based on new evidence, NAI cannot seriously argue any entitlement to bring successive interlocutory appeals based upon the same arguments, nor to appeal arguments which it could have appealed earlier, but did not. NAI's success thus depends on the alleged "newly discovered evidence" supporting these arguments.

The evidence NAI identifies as "newly discovered" in Cozza's deposition testimony involves a discussion of the possible method for calculating damages and references to allegedly false statements made in 1999 by three NAI employees during the negotiation of the Settlement. NAI refers to Cozza's "theory" that NAI "unilaterally extended" the License by not removing his technology and that thus damages "would be what was due according to the license agreement." These references, however, are embedded within a longer answer to the question of whether, as part of his claim for damages, Cozza thought he should be entitled to a percentage of the sales of NAI products containing his technology. Cozza responded that "we believe that, at a minimum, because Network Associates has unilaterally extended the license agreement, on its own terms, using the scan enhancement for however long they would like to use it, that at a minimum we should get what would have been required in the licensing agreement." Cozza was simply speculating that one factor the court might consider in assessing damages under the Settlement might be the fees that would have been due under the License.

Cozza's references to the allegedly false statements of NAI employees, while concerning conversations that occurred before the termination of the License, were made in connection with Cozza's claim that NAI engaged in unfair and deceptive practices in negotiating the Settlement. The mere fact that the Settlement was negotiated prior to the License's termination does not indicate that the claims Cozza makes regarding those negotiations implicate the License. Similarly, NAI refers to Cozza's statement that "from the very beginning until this day, Network Associates has acted to defraud me in various ways and at various times" as indicative of the reach of Cozza's claims to the parties' relationship under the License, when in fact the ensuing testimony clarifies that the misleading or deceptive behavior of which Cozza complains is that involved in the negotiation of the Settlement.

When Cozza was asked during the deposition if he was making any claim based on or arising out of the License, he stated that "[t]he settlement agreement was a settlement of disputes arising out of the license agreement, and we are litigating because of breach of contract of the settlement agreement. So, indirectly there is something to do with the issues arising out of the license agreement." When asked to clarify this comment by identifying how the License bears on his claim, he responded that one way would be in respect to damages. After further testimony regarding the possible role of the License in calculating damages, substantially

identical to that already discussed herein, Cozza was asked if he is seeking to enforce any provision of the License directly or indirectly, to which he responded: "We are not making any claims in the litigation based upon the license agreement." He proceeded to comment further that "by suing in the settlement -- according to the breach of contract, in the settlement agreement, depending on how you construe that, you could say, well, it may be indirectly some provision of the license agreement that's being fulfilled or something by the virtue of this suit on the breach of the settlement agreement." Regardless of these theoretical musings, which NAI would have us read as indicative of an intention to raise claims regarding the License, nothing in the record calls into question Cozza's initial response that he is "not making claims in the litigation based upon the license agreement."

None of the "newly discovered evidence" alleged by NAI constitutes new evidence supporting a motion to compel arbitration. It is "all too clear that defendants are seeking to accomplish by indirection what their own inaction now prevents them from doing directly: contesting, before trial, the appropriateness of the district court's earlier denial of their motion." Fisichelli, 884 F.2d at 19. We therefore need not, and do not, address the merits of NAI's argument that the district court erred in its interpretation of the Licensing Agreement.

-10-

## III.  <u>Conclusion</u>

The district court's denial of the motion to reconsider the motion to compel arbitration is affirmed.

**<u>Affirmed</u>**.