[Cite as *Kolosai v. Azem*, 2014-Ohio-4474.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100890**

# PAULETTE KOLOSAI, ADMINISTRATOR OF THE ESTATE OF NICHOLAS GIANCOLA

PLAINTIFF-APPELLANT

vs.

# HAITHAM MOUAID AZEM, M.D., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-806065

**BEFORE:** Stewart, J., Blackmon, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEYS FOR APPELLANT**

Mark A. DiCello
Robert F. DiCello
John W. Burnett
The DiCello Law Firm
7556 Mentor Avenue
Mentor, OH    44060

Jacques G. Balette
Marks, Balette & Giessel, P.C.
10000 Memorial Drive, Suite 760
Houston, TX    77024


**ATTORNEYS FOR APPELLEE WALTON MANOR HEALTH CARE**

Leslie Moore Jenny
Jason P. Ferrante
Marshall, Dennehey, Warner, Coleman & Goggin
127 Public Square, Suite 3510
Cleveland, OH    44114


**ATTORNEYS FOR DEFENDANT HAITHAM MOUAID AZEM, M.D.**

Rita A. Maimbourg
Jane F. Warner
Tucker Ellis, L.L.P.
950 Main Avenue, Suite 1100
Cleveland, OH    44113

MELODY J. STEWART, J.:

{¶1} Decedent Nicholas Giancola died while committed to the care of Walton Manor Nursing Home. The administrator of his estate, Paulette Kolosai, brought this wrongful death and negligence action against Cleveland Health Care Group, Inc.; Saber Healthcare Group, L.L.C.; Saber Healthcare Holdings, L.L.C.; and Haitham Mouaid Azem, M.D. (collectively "Walton Manor"), alleging that their care and treatment caused Giancola's death. Walton Manor filed a motion to stay the proceedings on behalf of all defendants but Azem, asking the court to refer the matter to arbitration consistent with a "Resident and Facility Arbitration Agreement" Giancola entered into with Walton Manor. The estate opposed the motion, arguing that Giancola's mother signed the arbitration agreement for Giancola, but lacked authority to bind Giancola to arbitration. The court found that the mother had apparent authority to bind Giancola based on the testimony of a representative from Walton Manor who said that Giancola was present when his mother signed the agreement. The court thus stayed the action and referred it to arbitration. The estate's two assignments of error collectively challenge the court's order.

{¶2} Arbitration is a matter of contract, and a party cannot be forced to arbitrate that which the party has not agreed to arbitrate. *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). When the parties dispute whether an agreement to arbitrate exists, that dispute presents a mixed question of fact and law — the courts determine whether a contract to arbitrate exists as a matter of fact, *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*,

73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995), but once an agreement to arbitrate is found to exist, the terms of that agreement are construed as a matter of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus.

{¶3} Walton Manor argues that it was Giancola, not the mother, who signed the arbitration agreement. In support of that argument, it points to admission documents signed by the mother at the time of her admission to Walton Manor and attached to its appellate brief as Appendix B. It claims that her signature is significantly different from the signature on the arbitration agreement at issue in this appeal, thus proving that Giancola, not the mother, signed the arbitration agreement at the time of his admission.

{¶4} Walton Manor candidly states that the mother's admission papers were "not available due to the lack of discovery prior to the Motion to Stay." Appellee's Brief at 2. It maintains, however, that "the new evidence completely clarifies the primary issue which Ms. Kolosai relies upon on this appeal; the identity of the signature that is on the Arbitration Agreement" and that "[i]t has never been clearer that Ms. Giancola did not sign the Arbitration Agreement and the signature does in fact belong to Nicholas Giancola." *Id*. at 3.

{¶5} As Walton Manor concedes, we cannot consider Appendix B because a reviewing court cannot add matter to the record and decide an appeal based upon that new matter. *State ex rel. Cotton v. Ghee*, 84 Ohio St.3d 54, 55-56, 701 N.E.2d 989 (1998). In addition, we note that Walton Manor has not authenticated the mother's admission

documents in any way. So even if that documentation was properly before us, it has no evidentiary value from which we could decide the appeal.

{¶6} Our inability to consider the substance of Appendix B in deciding the merits of this appeal does not, however, mean that we must disregard it entirely — by claiming that Giancola actually signed the arbitration agreement, Walton Manor has repudiated the rationale for the court's decision to refer the matter to arbitration. The court found that "decedent's mother had apparent authority to sign the admission paperwork, including the arbitration agreement, on decedent's behalf."

{¶7} Walton Manor states that it did not argue the theory of apparent authority below. In its motion to stay, Walton Manor stated that Giancola "entered into a Resident and Facility Arbitration Agreement" with Walton Manor — an assertion that would suggest Giancola signed the agreement. However, a Walton Manor employee testified at deposition that she personally witnessed the mother sign the arbitration agreement on Giancola's behalf. The estate made the Walton Manor representative's testimony the cornerstone of its argument and asserted that the mother lacked authority to bind Giancola. Walton Manor did not contradict its employee's deposition testimony. Furthermore, Walton Manor did not attempt to correct the court's analysis by pointing out that Giancola signed the arbitration agreement. We are left with no other choice but to conclude that Walton Manor allowed error to occur by its acquiescence to the court's finding that the mother signed the arbitration agreement on Giancola's behalf, and that she had apparent authority to do so.

{¶8} What this means is that Walton Manor's present argument — that Giancola signed the arbitration agreement — is fundamentally at odds with the court's decision. We thus view Walton Manor's use of Appendix B as a concession that the court's judgment rests on an erroneous proposition.

{¶9} Walton Manor hedges its argument by claiming that even if we ignore its new evidence on appeal, the apparent agency theory was appropriately relied upon by the court under the circumstances, thus providing sufficient justification for its decision to enforce the arbitration agreement. We decline to adopt that approach because it urges us to affirm the court on a ground that Walton Manor insists is erroneous. Although a party can urge an alternative basis for affirmance on appeal, it cannot do so when that basis is diametrically opposed to its primary position. *Republic Steel Corp. v. Bd. of Rev. of Cuyahoga Cty.*, 175 Ohio St. 179, 184-185, 192 N.E.2d 47 (1963). We will not affirm the court on a basis that an appellee concedes is factually wrong.

{¶10} With Walton Manor being deemed to have withdrawn any argument that the court did not err by finding that the mother had apparent authority to bind Giancola to arbitrate any disputes arising from his care and treatment as a patient at the nursing home, we sustain the first assignment of error. The second assignment of error is moot.

{¶11} This cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, P.J., and
TIM McCORMACK, J., CONCUR