[Cite as *Kolosai v. Azem*, 2016-Ohio-5831.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102920

---

# PAULETTE KOLOSAI, ADMINISTRATOR OF THE ESTATE OF NICHOLAS GIANCOLA

### PLAINTIFF-APPELLANT

vs.

# HAITHAM MOUAID AZEM, M.D., ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-806065

**BEFORE:** Laster Mays, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 15, 2016

**ATTORNEYS FOR APPELLANT**

Mark A. DiCello
Mark Abramowitz
Robert F. DiCello
Justin Hawal
The DiCello Law Firm
7556 Mentor Avenue
Mentor, Ohio 44060

Jacques G. Balette
Marks, Balette & Giessel, P.C.
10000 Memorial Drive, Suite 760
Houston, Texas 77024


**ATTORNEYS FOR APPELLEES**

Rita A. Maimbourg
Jane F. Warner
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Leslie Moore Jenny
Jason P. Ferrante
Kenneth W. McCaine
Marshall Dennehey Warner Coleman & Goggi
127 Public Square, Suite 3510
Cleveland, Ohio 44114

ON RECONSIDERATION[1]

ANITA LASTER MAYS, J.:

## I.     INTRODUCTION

{¶1}    Paulette Kolosai ("Kolosai"), administrator of the estate of Nicholas Giancola ("Nicholas"), is the plaintiff-appellant in this nursing home negligence and wrongful death case against defendants-appellees Cleveland Healthcare Group, Inc., Walton Manor Health Care Center, Saber Healthcare Group, L.L.C., Saber Healthcare Holdings, L.L.C., and Saber Healthcare Foundation (collectively "Walton Manor") and Haitham Mouaid Azem, M.D. ("Azem"). Kolosai appeals the trial court's grant, upon remand, of Walton Manor's renewed motion to stay/compel pending arbitration. On appeal, we vacated the judgment, finding that the law of the case doctrine controls. *Kolosai v. Azem*, 8th Dist. Cuyahoga No. 102920, 2016-Ohio-394, released February 4, 2016.

{¶2}    Walton Manor has filed an application for reconsideration of that decision, or in the alternative, for a rehearing en banc. Walton Manor has also filed a motion to certify a conflict. We have elected to proceed with reconsideration of this case.

{¶3} It is beyond dispute that this court has authority, which it lawfully chose to exercise in this case, to sua sponte invoke the law of the case doctrine:

---

[1]    The original announcement of decision in *Kolosai v. Azem*, 8th Dist. Cuyahoga No. 102920, 2016-Ohio-394, released February 4, 2016, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized

In *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, we held that an argument raised by the tax commissioner was barred by the law-of-the-case doctrine, even though the taxpayer did not assert the defense:

> We are justified in raising the doctrine sua sponte because we have held that the law-of-the-case doctrine reflects a strong public policy to "ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts." *Brothers v. Morrone-O'Keefe Dev. Co.*, 10th Dist. No. 06AP-713, 2007-Ohio-1942, 2007 WL 1196578, ¶ 35, quoting *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404, 1996 Ohio 174, 659 N.E.2d 781 (1996). *Id.* at ¶ 31, fn. 2.

*Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 128, 2015-Ohio-4304, 41 N.E.3d 396, ¶ 36.

**{¶4}** We also acknowledge the dissent's admonition that "appellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.'" *State v. 1981 Dodge Ram Van,* 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988). *State v. Tate,* 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, ¶ 21. The parties were therefor directed to brief the following issue:

> Whether the panel decision in *Kolosai v. Azem*, 8th Dist. Cuyahoga No. 100890, 2014-Ohio-4474 to reverse the trial court's decision granting a stay pending arbitration and to remand to the trial court for further proceedings consistent with this opinion precluded the trial court from considering a new or renewed motion for a stay pending arbitration?

---

decision in this appeal. *See* App.R. 22(C). *See also* S.Ct.Prac.R. 7.01.

**{¶5}** We find that the trial court was precluded from considering the renewed motion, allegedly based on new evidence. The case is reversed and remanded to the trial court to proceed with litigation in this case.

## II. BACKGROUND AND FACTS

**{¶6}** Kolosai filed this action on April 29, 2013, as amended on July 11, 2013, claiming: (1) corporate negligence; (2) corporate recklessness/willfulness; (3) medical negligence; (4) gross negligence; (5) resident rights violations; (6) wrongful death; and (7) survivorship damages. Walton Manor responded to the complaint by filing an answer on July 23, 2013. The answer included a number of affirmative defenses; however, there was no defense referencing an arbitration agreement or lack of jurisdiction though there was a reference to failure to comply with the admission agreement.

**{¶7}** On August 27, 2013, Walton Manor filed a motion to stay the proceedings pending arbitration, asserting that Nicholas signed a Resident and Facility Arbitration Agreement ("Arbitration Agreement"). Kolosai argued that the deposition testimony of Walton Manor's witness and former employee, Stephanie Lewis McCaulley ("Lewis"), who admitted Nicholas to the nursing home and signed the Arbitration Agreement as the facility representative, established that Nicholas's mother, Rose Giancola ("Rose") executed the Arbitration Agreement, thus rendering it unenforceable.

**{¶8}** Though Rose was admitted to the same nursing home just a few weeks after Nicholas,[2] no admissions documents containing Rose's signature were presented to the

---

[2] Nicholas was admitted on October 28, 2011. Rose was admitted on November 21, 2011.

court evidencing Walton Manor's argument that Nicholas signed the agreement. Instead, Walton Manor relied on the copy of the Arbitration Agreement containing a signature above the name of Nicholas. Walton Manor also argued that Lewis's testimony was vague and was not based on actual knowledge.

{¶9} The trial court granted the stay as to counts 1 through 5 and 7, determining that Rose signed Nicholas's Arbitration Agreement. This finding, alone, would make the Arbitration Agreement unenforceable. However, the trial court further decided that Rose had apparent authority to bind Nicholas to the Arbitration Agreement. As a result, the trial court granted the motion to stay but retained the wrongful death claim set forth in Count 6 for further proceedings on the ground that a decedent cannot bind beneficiaries to arbitration in a wrongful death claim. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, ¶ 19.

{¶10} On January 15, 2014, Kolosai appealed the trial court's order in *Kolosai v. Azem,* 8th Dist. Cuyahoga No. 100890, 2014-Ohio-4474 ("*Kolosai I.*") Kolosai argued that the trial court erred in granting the stay, holding that Rose signed the Arbitration Agreement that would render it unenforceable, yet determining the Arbitration Agreement was, in fact, enforceable under the doctrine of apparent authority, an argument that was not offered by either party. Walton Manor at no point during the trial court proceedings offered evidence to support its argument that Nicholas signed the Arbitration Agreement.

---

Both Rose and Nicholas are now deceased.

{¶11}  While advocating before this court on appeal, Walton Manor proffered documents that were not part of the record. The documents consisted of Rose's admissions documents, documents that had been in Walton Manor's possession since Rose's 2011 admission to the facility.  The documents had never been introduced as evidence. Walton Manor claimed that the documents from its files, "were not available due to the lack of discovery prior to the Motion to Stay."  Appellee's Brief at 2. *Kolosai I* at ¶ 4.

{¶12}  We noted in our opinion that, while new evidence could not be entertained by this court, the submission of the additional documentation to support the premise that Nicholas signed the Arbitration Agreement effectively confirmed Kolosai's position that the trial court's finding of apparent authority was erroneous.  This court also rejected Walton Manor's fall back position offered during the appeal that the trial court correctly determined that a stay was appropriate based on the doctrine of apparent authority because that position was in direct conflict with their contrary argument that Nicholas signed the Arbitration Agreement.[3]  *Id*. at ¶ 9-10.

> {¶13}   Thus, we sustained Kolosai's first assignment of error that:
> The trial court abused its discretion in finding the Arbitration Agreement was enforceable due to apparent agency principles.  The trial court should not have relied upon this theory because it was an erroneous interpretation of fact and not addressed in the motion to stay and enforce the binding Arbitration Agreement.

---

[3]  "Walton Manor hedges its argument by claiming that even if we ignore its new evidence on appeal, the apparent agency theory was appropriately relied upon by the court under the circumstances, thus providing sufficient justification for its decision to enforce the arbitration agreement." *Kolosai I* at ¶ 9.

In light of the trial court's improper reliance on the agency principle, this court reversed and remanded "for further proceedings consistent with the opinion." *Id*. at ¶11.

{¶14} On remand, Walton Manor filed a renewed motion to stay arbitration on December 12, 2014. Attached to the motion were copies of the documents that were improperly proffered during *Kolosai I*, the 2011 Walton Manor admissions form executed by Rose on her behalf, and a December 4, 2014 letter, on Speckin Forensic Laboratories letterhead and signed by Robert D. Kullman ("Kullman"), Forensive Document Analyst.[4] Kullman opined that, based on his review of machine copies of documents known to contain the signatures of Nicholas and Rose, (1) the signatures on the machine copies of Nicholas's admission and arbitration agreements were probably written by the same person, to a reasonable degree of scientific certainty; and (2) the signatures on those agreements, compared with documents containing Rose's signature were, to a reasonable degree of scientific certainty, not written by the same person.

{¶15} Kolosai replied on December 19, 2014, arguing that the law of the case applied because *Kolosai I* determined that the Arbitration Agreement, that the trial court held was signed by Rose, was not enforceable because apparent authority did not apply. The impact of the *Kolosai I* decision was that the trial court was to lift the stay and move forward with the case on the merits. Kolosai also argued that: (1) Walton Manor failed to submit Rose's information during the initial proceedings though it had been in

---

[4] The document also states that a Curriculum Vitae with Kullman's last four years of testimony is attached, but it is not a part of the court filing.

their possession since November 2011; (2) due to the law of the case, the motion should have been made under Civ.R. 60(B); (3) Walton Manor waived the right to a stay by conducting the depositions of Nathan and Vanessa Giancola on the merits of the case; and (4) Kullman's report was unreliable because it failed to meet the *Daubert*[5] test for expert qualifications and reliability under Evid.R. 702 as set forth in *Walker v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 100759, 2014-Ohio-4208.

{¶16} Walton Manor countered on January 5, 2014. The trial court held an evidentiary hearing on February 27, 2015.  Prior to the hearing, Walton Manor filed a document entitled Notice of Filing of Affidavit of Robert Kullman containing an affidavit by Kullman setting forth his findings, a copy of the report submitted with Walton's Manor's initial motion, except that the missing Curriculum Vitae was included, and copies of the documents that Kullman relied on in forming his opinion. Kolosai objected that the document was handed to Kolosai's counsel two hours before the hearing.

{¶17}    At the hearing, Walton Manor's counsel told the trial court that the law firms had been in discussions since 2013 regarding obtaining a release for Rose's forms due to that Health Insurance Portability and Accountability Act ("HIPAA") concerns, and that conversations and email exchanges during 2013 and 2014 documented these discussions. Counsel stated the information could not be provided to the trial court or to

---

[5]    *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Kolosai until Kolosai's legal firm provided a signed release on April 23, 2014.[6]  Counsel reiterated that Walton Manor's position has always been that Nicholas signed the documents.

{¶18}  Kolosai's counsel responded that an agreement had been reached with Walton Manor's counsel via telephone on September 9, 2013, to conduct limited discovery, which was confirmed via email.  The email stated that Walton Manor would produce all documents signed during Nicholas's admission and all medical records, and allow a short deposition of Lewis.

{¶19}  The medical records were provided but, despite emails and phone calls up to the night before the October 29, 2013 deposition, Nicholas's admissions records were delivered 20 minutes before the deposition.  The records included a checklist form that stated Rose signed Nicholas's documents.  Counsel showed the documents to Lewis who said that she never presented the documents to Nicholas.

{¶20}  Kolosai's counsel also stated he had asked Walton Manor to withdraw the motion to compel or stay pending arbitration based on the checklist information as confirmed by Lewis's testimony.  The response was an email stating the motion would not be withdrawn because Walton Manor's counsel did not think that Rose signed it.

{¶21}  Kolosai's counsel denied that Walton Manor had ever requested a release or tried to introduce any information about Rose's signature until *Kolosai I*.  Counsel

---

[6]  In *Kolosai I*, Walton Manor's explanation was that the documents were not available until the appellate proceedings due to the lack of discovery during the motion to stay.

also stated that the documents were covered by HIPAA and argued that the entire basis for the renewed motion based on the withheld evidence was Kullman's report analyzing documents that had been available since Rose's 2011 admission to rebut the testimony of their own witness, Lewis.

{¶22} Kolosai's co-counsel added that Walton Manor failed to produce evidence that it made any requests for a release in spite of the trial court's directive that Walton Manor supply those documents in response to Kolosai's November 2013 motion requesting them. As a result of Walton Manor's failure to comply, Kolosai's firm hired an IT firm to check the law firm's in-house server for documents from or to Walton Manor's counsel. The testimony was that the only related document located was the April 2014 cover letter to counsel sending a release for Rose's documents in response to a request.

{¶23} Walton Manor concluded with an argument that Lewis's deposition demonstrated no independent recollection of Rose signing the document and that Nicholas signed his own documents. Kolosai's counsel added he would be filing affidavits by two other attorneys with their firm substantiating that Walton Manor made no prior requests for a release for Rose.

{¶24} The parties submitted post-hearing briefs. Kolosai reiterated that the Rose evidence had been in Walton Manor's possession since her admission in 2011, so it was not new, disputed the efficacy of Kullman's affidavit, and argued that Kolosai had no

opportunity to conduct discovery, secure a rebuttal expert, or cross-examine Kullman, a paid biased witness.

**{¶25}** Kolosai also reminded the trial court of Lewis's deposition testimony that Rose signed the document, not Nicholas, and pointed out that, on the admission checklist in Nicholas's file, the name "Rose Giancola" is typewritten in the box under "who signed resident admission paperwork?" The argument was also made that Rose's documents were not HIPAA protected so Walton Manor's argument that the delay in producing the documents was due to the inability to obtain a release was not accurate.

**{¶26}** The trial court determined that, based on the opinion of the expert, as well as exhibits, Nicholas signed the Arbitration Agreement and granted the stay. The judgment entry stated that Kolosai failed to rebut the Kullman report and exhibits submitted by Walton Manor. The court's entry also stated:

> Plaintiffs' post-hearing brief includes a motion to strike Kullman's affidavit, because, in part, "he ignores the plain [fact] that * * * *this court has already ruled that Rose Giancola signed the arbitration agreement." However, as stated, that ruling was reversed by the Court of Appeals.* Accordingly, plaintiffs' motion to strike is denied. Upon remand, defendants' renewed motion to stay proceedings and compel/enforce arbitration is granted.

(Emphasis added.)

**{¶27}** This appeal ensued.

## III. ASSIGNMENTS OF ERROR

I. The trial court abused its discretion by ruling against the clear manifest weight of the evidence.

II.    It was error for the trial court to consider the affidavit of defendants' expert, previously undisclosed, in ruling on defendants' renewed motion to compel arbitration.

III.    The trial court erred by reversing its earlier ruling finding that Rose Giancola signed the arbitration agreement.

## IV.    LAW AND ANALYSIS

**{¶28}** We are prevented from addressing Kolosai's assignments of error by our determination that the law of the case doctrine and the mandate rule control. Where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Arizona v. California*, 460 U.S. 605, 681, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), citing 1B J. Moore & T. Currier, *Moore's Federal Practice* (1982).

**{¶29}** The law of the case doctrine provides that the legal issues involved have been decided with finality and the trial court, on remand, is to apply the law as decided. *State ex rel. Sharif v. McDonnell*, 91 Ohio St.3d 46, 47-48, 2001- Ohio-240, 741 N.E.2d 127; *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "The law of the case doctrine is 'necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution'." *Novy v. Ferrara*, 11th Dist. Portage No. 2014-P-0064, 2015-Ohio-4428, ¶ 22, quoting *Nolan* at ¶ 3.

**{¶30}** The doctrine "is rooted in principles of res judicata and issue preclusion." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 35. It "precludes a litigant from attempting to rely on arguments at a retrial which were fully

pursued, or available to be pursued," in a first appeal. *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404-405, 1996-Ohio-174, 659 N.E.2d 781. In addition:

> The doctrine of the law of the case "is a rule of practice analogous to estoppel." *Allen v. Bennett,* 9th Dist. Summit No. 24124, 2008-Ohio-4554, ¶ 9, quoting *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, at ¶ 22. "The doctrine also limits the actions that a trial court may take on remand to the scope of the reviewing court's mandate and places a corresponding limitation on the ability of an appellant to assert error in subsequent appeals."

*Id.*, citing *Neiswinter v. Nationwide Mut. Fire Ins. Co.*, 9th Dist. Summit No. 23648, 2008-Ohio-37, ¶ 10. *State v. Kay,* 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 12.

{¶31} While the "law of the case is broadly applicable and non-jurisdictional, the mandate rule, pertaining only to the relationship between appellate and inferior courts, is a jurisdictional bar on the inferior court's authority to reconsider issues that were expressly or impliedly decided in a previous appeal." *Phillips v. Houk*, 587 Fed.Appx. 868, 871 (6th Cir.2014). As this court has explained:

> The law of the case is not to be confused with the "mandate rule." An appellate mandate works in two ways: it vests the lower court on remand with jurisdiction and it gives the lower court on remand the authority to render judgment consistent with the appellate court's judgment. Under the "mandate rule," a lower court must "carry the mandate of the upper court into execution and not consider the questions which the mandate laid at rest." *Sprague v. Ticonic Nat'l Bank* (1939), 307 U.S. 161, 168, 59 S. Ct.

777, 83 L. Ed. 1184; see, also, *State ex rel. Cordray v. Marshall*, 123 Ohio St.3d 229, 2009 Ohio 4986, 915 N.E.2d 633, at ¶ 32 ("We have expressly held that the Ohio Constitution does not grant to a court of common pleas jurisdiction to review a prior mandate of a court of appeals."). *The lower court may, however, rule on issues left open by the mandate. Id. But when the mandate leaves nothing left to decide, the lower court is bound to execute it. Id.* We have stated that the mandate rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *State v. Larkins*, 8th Dist. No. 85877, 2006 Ohio 90, at ¶ 31. (Emphasis added.) *State v. Carlisle*, 8th Dist. Cuyahoga No. 93266, 2010-Ohio-3407, ¶ 16.

**{¶32}** In *Kolosai I*, "the [trial] court found that the mother had apparent authority to bind Giancola based on the testimony of a representative from Walton Manor who said that Giancola was present *when his mother signed the agreement.*" ( Emphasis added.*) Id*. at ¶ 1. Based on that determination, the trial court determined the Arbitration Agreement to be enforceable and ordered that the case be stayed pending arbitration. *Id.*

**{¶33}** Kolosai's assigned error on appeal did not challenge the trial court's finding that the mother signed the Arbitration Agreement. Kolosai argued that the trial court erred in determining that: (1) Nicholas was present when Rose signed Nicholas's Arbitration Agreement; and (2) because he was present, the doctrine of apparent authority

applied, an argument that was never before the court. Walton Manor responded that "it did not argue the theory of apparent authority below." *Kolosai I* at ¶ 7.

**{¶34}** We sustained Kolosai's assignment of error, noting that a "Walton Manor employee testified at deposition that she personally witnessed the mother sign the arbitration agreement on Giancola's behalf." *Id.* Walton Manor stated in *Kolosai I* that it did not argue that the mother signed the Arbitration Agreement, however, they did not file a cross-appeal challenging the trial court's finding on that issue or introduce any evidence to the contrary. Thus, this court held that "[w]e are left with no other choice but to conclude that Walton Manor allowed error to occur by its acquiescence to the court's finding that the mother signed the Arbitration Agreement on Giancola's behalf, and that she had apparent authority to do so." *Id.*

**{¶35}** Accordingly, Walton Manor had "withdrawn any argument that the court did not err by finding that the mother had apparent authority to bind Giancola to arbitrate any disputes arising from his care and treatment as a patient at the nursing home." *Id.* at ¶ 10. The case was "reversed and remanded to the trial court for further proceedings consistent with this opinion." *Id.* at ¶ 11.

**{¶36}** The law of the case was established in *Kolosai I* — that the Arbitration Agreement, executed by Rose, cannot be enforced under the doctrine of apparent authority. In other words, the trial court's "initial application of apparent agency was reversed on appeal." Walton Manor's Renewed Motion, p. 8. As to the scope of the remand, the stay was lifted and the matter should have been placed on the court's regular

docket to proceed on the merits. *See generally State ex rel. Keith v. Gaul,* 8th Dist. Cuyahoga No. 102875, 2015-Ohio-3480. The scope of the mandate need not be contained within a specific sentence or paragraph. The appellate court must consider the opinion in its entirety, as the "relevant language could appear anywhere in an opinion or order, including a designated paragraph or section, or certain key identifiable language." *United States v. Campbell*, 168 F.3d 263, 267 (6th Cir.1999).

**{¶37}** Walton Manor argues on reconsideration that the law of the case doctrine does not apply where, as here, "the evidence was not identical" in the initial and subsequent proceedings, pursuant to *Stemen v. Shibley*, 11 Ohio App.3d 263, 266, 465 N.E.2d 460 (6th Dist.1982). We find *Stemen* to be distinguishable.

**{¶38}** Appellant Stemen challenged the appointment of a receivership that included operation of a liquor permit issued to appellant and defendant-appellee Morris. One of the four codefendants-appellees ("Kiroff") filed a motion to dismiss and two ("Shibley" and "Pete Morris") filed for summary judgment. Stemen failed to submit opposing evidence and all motions were granted. *Id.* at 264.

**{¶39}** Stemen appealed.[7] The appellate court determined the trial court erred in granting summary judgment because there were still genuine issues of material fact regarding, (1) whether the receiver's actions were within the scope of the court's order, and (2) whether codefendant Pete Morris could claim the benefit of a release to which he

---

[7] "*Stemen v. Shibley* (June 19, 1981), Lucas. App. No. L-80-244, unreported." *Id.*

was not a party.  *Id*.  The case was remanded for proceedings consistent with the appellate court's decision.

**{¶40}**  Shibley and Pete refiled for summary judgment with additional affidavits and exhibits and Stemen again failed to file refuting evidence, though he did file an opposing memorandum.  The trial court granted the motions and the instant appeal ensued.  *Id.*  The issue on appeal was, as relates to the law of the case doctrine, and arguably the scope of the mandate, "whether the entertaining and granting of appellees' motion for summary judgment is not, per se, a further proceeding consistent with our decision."  *Id.* at 265.

**{¶41}**  Noting that neither of the parties cited case law directly on point, nor could the court independently identify such a case, the court embarked on a doctrinal examination:

> We begin our analysis by acknowledging that, *when a retrial of a case is concerned*, the doctrine of the law of the case:  "* * * may be invoked and applied only when the facts and issues upon a second trial are substantially the same as those on which the first decision rested; it does not apply to cases in which the facts and issues presented on the second review are substantially different from those before the court on the previous review, or where the * * * evidence was not identical in both the first and second trials, notwithstanding that the successive trials were had on the very same issues."   (Emphasis added.) 5 Ohio Jurisprudence 3d (1978) 314-315, Appellate Review, Section 652.

*Id*. at 266.

**{¶42}**  The *Stemen* court examined several cases including this court's decision in *Firemen's Ins. Co. v. Stern*, 11 Ohio C.D. 818 (8th Dist.1901), which found that, where a case is remanded for a new trial, the law of the case doctrine does not apply "where the

facts and issues in the second trial are not substantially the same as those in the first trial. *Thomas v. Viering*, 9th Dist. Summit No. 2351, 1934 Ohio Misc. LEXIS 1093 (Oct. 1, 1934)." *Stemens,* at 266. Also cited was *Brownfield v. Landon,* 113 U.S. App.D.C. 248, 307 F.2d 389 (1962), for the premise that the federal system allowed a second motion for summary judgment when it was based on an expanded record.

{¶43} The *Stemen* court pointed to the language of Civ.R. 56(B) which allowed for filing of a motion for summary judgment "at any time" and commented on Stemen's total lack of effort to refute the initial and subsequent motions by affidavit or evidence. The court affirmed, finding it was "not per se prejudicial and reversible error" and based on the "expanded record" line of cases. *Id*. at 267.

{¶44} In this case, Walton Manor asserted in the trial court that Nicholas signed the agreement but, (1) failed to proffer evidence in support of their position either initially or in rebuttal, and (2) failed to file a cross-appeal in *Kolosai I* challenging the trial court's finding that Rose signed the agreement. Instead, Walton Manor rode the apparent authority wave throughout *Kolosai I* until effectively conceding that the assigned error was correct. Now Walton Manor argues that the renewed motion is not subject to the law of the case doctrine because of the new facts and issues involved in the renewed motion.

{¶45} The renewed motion was based on the "new evidence," that is the expert opinion that accompanied the renewed motion to stay pending arbitration upon remand by this court. The opinion was, in turn, based on the expert's review of more "new evidence," an admissions document from Walton Manor's files, executed by Rose in

2011 when she was admitted to Walton Manor's facility just weeks after the admission of Nicholas. This information, Walton Manor argues, was not available previously due to a lack of discovery and/or privacy issues.

{¶46} The amended complaint was filed in July 2013. The case management order provided a responsive pleadings deadline of August 15, 2013. Walton Manor, and codefendants, answered the complaint on July 23, 2013. On August 27, 2013, the defendants filed the motion to stay proceedings and compel/enforce arbitration.

{¶47} By stipulation, Kolosai was granted leave to respond to the motion until November 25, 2013. The October 29, 2013 deposition transcript of Walton Manor employee Lewis-McCauley was filed on November 25, 2013, and concurrently Kolosai's memorandum in opposition to the motion to stay. The court's judgment entry was issued on December 18, 2013, finding that Rose signed the agreement and did so with apparent authority to bind Nicholas.

{¶48} Rose died in December 2013. The appeal was initiated January 25, 2014. Upon remand, the trial court rejected Kolosai's argument that the trial court had already ruled that Rose signed the arbitration agreement. "However, as stated, that ruling was reversed by the court of appeals."

{¶49} We, like the careful analysis conducted in *Stemen*, *supra,* also look to similar case law for guidance as we find that the situation here diverges from cases where the record expanded because of evidence that was not previously known, i.e., "newly discovered."

**{¶50}**  Instructive here is *Cozza v. Network Assocs.*, 362 F.3d 12 (1st Cir. 2004). *Cozza* involved an arbitration clause contained in a license agreement.  A dispute arose over royalties and a settlement agreement ensued.  The license expired December 31, 2001, two years after the 1999 settlement agreement.  In June 2002, *Cozza* sued for breach of the settlement and other claims.  NAI sought to compel arbitration pursuant to the license.  The district court denied the motion, finding that the claims did not fall under the license and that "*Cozza* had made binding representations that he had not, and would not, assert any claims under the license."  *Id*. at 13-14.  NAI did not appeal.

**{¶51}**  After discovery, NAI filed a motion for reconsideration of the motion to compel arbitration arguing the deposition evidence revealed claims that related to the license.  The district court denied the motion and NAI appealed. The parties were required to brief the question of whether the motion could be construed as a renewed motion based on newly discovered evidence and whether the appellate court had jurisdiction to consider the order.  *Id.* at 14.

**{¶52}**  NAI argued that all interlocutory orders could be appealed at any time before final judgment pursuant to the Federal Arbitration Act due to the presumption favoring arbitration.  *Cozza* rebutted that:

> [S]imilar reasoning has been rejected in the context of qualified immunity, where the thirty day deadline to appeal interlocutory orders under Federal Rules of Appellate Procedure 4(a)(1) has been enforced, and appeals of orders denying reconsideration "cannot resurrect a party's expired right to contest the appropriateness of the order underlying the motion." *Fisichelli v. The City Known as the Town of Methuen*, 884 F.2d 17, 19 (1st Cir. 1989). Otherwise, "Rule 4(a)(1) would be stripped of all meaning; . . . *and a*

*dilatory defendant would receive not only his allotted bite at the apple, but an invitation to gnaw at will.*" *Id.*

(Emphasis added.) *Cozza* at 14. *See also McNamara v. McNamara*, 8th Dist. Cuyahoga No. 102330, 2015-Ohio-2707, ¶ 23 ("evidence that could have been discovered prior to trial by the exercise of due diligence does not qualify as newly discovered evidence.")

**{¶53}** The appellate court determined that no intricate jurisdictional analysis was required and that, as Kolosai has alluded in this case, the appealability could be evaluated in terms of the newly discovered evidence requirement of Civ.R. 60(B). The Civ. R. 60(B) standard is that the moving party must show that the newly discovered evidence could not have been timely discovered by due diligence. *See Ross v. Wolf Envelope Co.*, 8th Dist. Cuyahoga No. 57015, 1990 Ohio App. LEXIS 3179, at *6 (Aug. 2, 1990). Further:

> [A] motion for relief from judgment pursuant to Civ.R. 60(B) may not be used as a substitute for a timely appeal. *Doe v. Trumbull County Children Services Board* (1986), 28 Ohio St. 3d 128, 502 N.E.2d 605; *National Amusements, Inc. v. Springdale* (1990), 53 Ohio St. 3d 60, 63, 558 N.E.2d 1178; *McCann v. City of Lakewood*, 95 Ohio App. 3d 226, 642 N.E.2d 48 (1994). If the motion is premised upon issues which could have been raised on appeal, a trial court does not abuse its discretion by denying such motion. *Justice v. Lutheran Social Services of Central Ohio* (1992), 79 Ohio App. 3d 439, 442, 607 N.E.2d 537.

*Marino v. Marino,* 8th Dist. Cuyahoga No. 73698, 1998 Ohio App. LEXIS 5783, at *7 (Dec. 3, 1998).

**{¶54}** The *Cozza* court noted that the arguments determined that:

> All of these arguments were available to NAI when it brought its first motion to compel arbitration and all were argued at that time, when the opportunity to appeal the motion's denial under the FAA was undeniable.

  *  *  *

  NAI cannot seriously argue any entitlement to bring successive interlocutory appeals based upon the same arguments, nor to appeal arguments which it could have appealed earlier, but did not. NAI's success thus depends on the alleged "newly discovered evidence" supporting these arguments.

*Cozza* at 14-15.

**{¶55}** The court scrutinized the deposition transcript to determine whether, in fact, it supported NAI's position. The finding was that:

  None of the "newly discovered evidence" alleged by NAI constitutes new evidence supporting a motion to compel arbitration. *It is "all too clear that defendants are seeking to accomplish by indirection what their own inaction now prevents them from doing directly*: contesting, before trial, the appropriateness of the district court's earlier denial of their motion." *Fisichelli,* 884 F.2d at 19. We therefore need not, and do not, address the merits of NAI's argument that the district court erred in its interpretation of the Licensing Agreement.

(Emphasis added.) *Cozza at* 14-15.

**{¶56}** Thus, we examine Walton Manor's claim here. During *Kolosai I*, "Walton Manor candidly stated that the mother's [unauthenticated] admission papers were 'not available due to the lack of discovery prior to the Motion to Stay.' Appellee's brief at 2." *Kolosai I* at ¶ 4. At the renewed motion hearing, Walton Manor informed the trial court that it was prevented from producing the documents with Rose's signature due to HIPAA concerns stating that, in spite of repeated requests, opposing counsel failed to respond to Walton Manor's efforts to obtain a release from Kolosai.

**{¶57}** In support of their position, Walton Manor introduced three documents. The first was an October 31, 2013 email from their counsel to Kolosai's counsel. The

email does not reference a request for a release but is Walton Manor's response to Kolosai's request to withdraw the motion to stay because there was no evidence that Rose signed by power of attorney. Walton Manor's counsel stated that based on a review of the "file, records, etc.," counsel believed that Nicholas signed.

{¶58} The other documents provided in support of Walton Manor's position were the (1) April 23, 2014 facsimile letter from Kolosai's counsel to counsel for Walton Manor transmitting the release signed by Nathan Giancola allowing the release of the contract between Rose and Walton Manor, and (2) an April 23, 2014 email with a pdf document noted but not attached to the exhibit, from Walton Manor to Kolosai stating that Rose's admission agreement was attached.

{¶59} Kolosai proffered testimonial evidence by several counsel for Kolosai that the sole request from Walton Manor was depicted by the April 23, 2014 exchange of information. Kolosai also performed a search of its information technology system for any emails or records from the domain of Walton Manor's firm, printed the results and the only references to a release were contained in the April 2014 document.

{¶60} This court released its opinion in *Kolosai I* on October 9, 2014. The renewed motion was filed December 12, 2014.

{¶61} The record does not support the assertion that the evidence was newly discovered and could not have been discovered with due diligence. Walton Manor's initial appellate court contention during *Kolosai I* that they were unable to produce the evidence in their records due to an inability to conduct discovery during the period the

motion to stay was pending is not substantiated by the record. Walton's Manor's subsequent explanation offered during the renewed motion to compel hearing is also unsupported. Assuming HIPAA governed the documents in issue, the record lacks evidence of any attempt by Walton Manor to secure a release until April 2014.

{¶62} Walton Manor is attempting to relitigate matters already decided. *State v. Larkins*, 8th Dist. Cuyahoga No. 85877, 2006-Ohio-90, ¶ 30, citing *McDonnell*, 91 Ohio St.3d 46, at 47-48, 2001-Ohio-240, 741 N.E.2d 127. We reiterate that the law of the case doctrine "precludes a litigant from attempting to rely on arguments at a retrial [or rehearing] which were fully pursued, *or available to be pursued*, in a first appeal." (Emphasis added.) *Hubbard*, *supra*. In addition, the trial court could not exceed the mandate of this court. *United States v. Moore*, 131 F.3d 595, 597 (6th Cir.1997). The trial court lacked authority to proceed in contravention of this court's mandate.

{¶63} The trial court's judgment is vacated and the case is reversed and remanded for proceedings on the regular docket consistent with this opinion. It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
MELODY J. STEWART, J., DISSENTS WITH SEPARATE OPINION
MELODY J. STEWART, J., DISSENTING:

{¶64} Walton Manor's motion to stay proceedings and refer the case to arbitration was based on Giancola having signed a resident and facility arbitration agreement that bound the parties to arbitration. When the estate filed its opposition to the motion to stay and refer the case to arbitration, it did so by claiming that it was not bound by the agreement because Giancola did not actually sign it. In support of that position, the estate offered deposition testimony by a Walton Manor employee who claimed that Giancola's mother signed the arbitration agreement. The employee also testified that she had "no evidence" that the mother had apparent authority to bind Giancola. The trial court, noting that the same Walton Manor employee testified that Giancola was present at that time the mother signed agreement, concluded that the mother had apparent authority to sign the agreement and bind Giancola.

{¶65} The estate appealed, arguing that the court erred as a matter of law by finding that the mother had apparent authority to bind Giancola. Walton Manor filed an appellee's brief charging the estate with propagating "an incorrect fact that Ms. Giancola signed her son's arbitration agreement." Citing "new evidence" that it maintained would clarify the primary issue on appeal, Walton Manor asserted that "it has never been clearer that Ms. Giancola did not sign the Arbitration Agreement and the signature does in fact

belong to Nicholas Giancola." Walton Manor conceded that its "new" evidence was not a part of the record on appeal, but stated:

> Even if this Court does not consider the new evidence and returns this matter to the trial court, it will quickly be brought to the trial court's attention and, more likely than not, lead to an identical ruling, and this case will once again return to this appellate court for a ruling on the real matter at issue — the enforceability of the arbitration provision.

Appellee's brief at 3-4, filed in *Kolosai v. Azem*, 8th Dist. Cuyahoga No. 100890, 2014-Ohio-4474.

{¶66} Acknowledging that Walton Manor could not add to the record on appeal, we considered Walton Manor's claim that at all times it maintained that Giancola signed the arbitration agreement, as repudiating the trial court's finding that Giancola's mother signed the agreement and that she had the authority to bind Giancola to the agreement. *Kolosai v. Azem*, 8th Dist. Cuyahoga No. 102920, 2016-Ohio-394, ¶ 6. Although Walton Manor offered alternative arguments for affirming the trial court's order to stay proceedings and enforce arbitration, we refused to consider those arguments and would not "affirm the court on a basis that an appellee concedes is factually wrong." *Id*. at ¶ 9. We viewed Walton Manor's new evidence on appeal as "a concession that the court's judgment rest[ed] on an erroneous proposition," *id*. at ¶ 8, and concluded by stating:

> With Walton Manor being deemed to have withdrawn any argument that the court did not err by finding that the mother had apparent authority to bind Giancola to arbitrate any disputes arising from his care and treatment as a patient at the nursing home, we sustain the first assignment of error. The second assignment of error is moot.

*Id*. at ¶ 10.

**{¶67}** We reversed and remanded the case "for further proceedings consistent with this opinion." *Id*. at ¶ 11.

**{¶68}** On remand to the trial court, Walton Manor filed a new motion to stay proceedings and refer the case to arbitration, this time offering the opinion of a handwriting expert who found that Giancola actually signed the arbitration agreement. The trial court overruled the estate's objections to any decision that held other than that the mother signed the arbitration agreement, noting that its initial ruling had been "reversed by the court of appeals." It also overruled objections to the qualifications of Walton Manor's handwriting expert. The trial court granted the renewed motion to stay and refer the case to arbitration, finding that "Nicholas Giancola signed the admission agreement and acknowledgment regarding arbitration, and is, therefore, bound by its terms."

**{¶69}** A recitation of the procedural history of this case is necessary in order to dispel two erroneous conclusions reached by the majority: first, that the trial court was barred by the law of the case doctrine from finding that Giancola signed the arbitration agreement; second, that our mandate remanding for "further proceedings" actually meant that the case had to go to trial on the claims raised in the estate's complaint.

**{¶70}** The majority appears to believe that our prior decision in *Kolosai* reversed only the question of the mother's apparent authority to sign the arbitration agreement, not whether she actually signed the arbitration agreement. This fails to acknowledge the nature of what caused us to reverse: by asserting that it had evidence that Giancola

actually signed the arbitration agreement and never argued the theory of apparent authority, Walton Manor was necessarily conceding that there was an erroneous basis for the trial court's granting the motion to stay and referring the case to arbitration.[8]

{¶71} The only "law" established in *Kolosai* was that the trial court erred by finding that Giancola's mother had the apparent authority to sign the arbitration agreement. This proposition is self-evident because (1) the estate's assignment of error rested on the claim that the court abused its discretion by finding that Giancola's mother had apparent authority to sign the arbitration agreement, and (2) Walton Manor, by offering new evidence for the first time on appeal that it claimed showed that Giancola personally signed the arbitration agreement, was deemed to have conceded that the trial court erred by finding that the mother had apparent authority to bind Giancola to arbitration of any disputes with Walton Manor. The majority's conclusion leads to the absurd result that *Kolosai* ruled as a matter of law that the mother signed the arbitration agreement while at the same ignoring its own characterization of Walton Manor's concession on appeal that the court erred by relying on a theory of apparent authority because it was Giancola who actually signed the arbitration agreement. By ordering a remand for "further proceedings," *Kolosai* returned the case to the status quo ante with

---

[8] Arguably, some of the analysis set forth by the majority might apply if the trial court had *denied* Walton Manor's motion to stay and Walton Manor appealed the denial. But such is not the case. The court ruled in Walton Manor's favor by granting the motion to stay. Our decision simply recognized what Walton Manor conceded in the first appeal: that the reason given for the trial court's decision was erroneous. *Kolosai* neither decided nor considered whether the granting of the motion, in and of itself, was error.

both parties being free to proceed with the litigation as they saw fit and as managed by the trial court.

**{¶72}** The restoration of the status quo ante precluded the application of the law of the case doctrine. With respect to final orders, the law of the case doctrine "does not apply when subsequent proceedings involve an expanded record or different legal issues." *Berlekamp Plastics, Inc. v. Buckeye Union Ins. Co.*, 6th Dist. Sandusky No. S-98-036, 1999 Ohio App. LEXIS 1024 (Mar. 19, 1999), citing *Johnson v. Morris*, 108 Ohio App.3d 343, 349, 670 N.E.2d 1023 (4th Dist.1995), and *Stemen v. Shibley*, 11 Ohio App.3d 263, 265, 465 N.E.2d 460 (6th Dist.1982).

**{¶73}** Walton Manor's first motion to stay and compel arbitration did not rely on a theory of apparent authority — it sought arbitration on grounds that Giancola personally entered into the arbitration agreement with Walton Manor. It was the estate that raised the issue of apparent authority in its opposition to the motion to stay. The court's ruling on the first motion was undeniably based on a theory of apparent authority, so at the time the case was remanded for further proceedings consistent with our opinion, the trial court could continue with the case in any form or fashion, other than maintaining a stay of the case based on the doctrine of apparent authority under the facts that had been presented to it. To hold otherwise not only ignores the nature of our remand in *Kolosai*, but misstates well-settled law on the application of the law of the case doctrine.

**{¶74}** I therefore dissent from the decision reached by the majority.