JOURNAL ENTRY AND OPINION
{¶ 1} Respondent-appellant, Select Management Holdings, Inc. ("Select"), a close corporation, appeals from a common pleas court order compelling the parties to arbitrate two issues: (1) whether Select was obligated to purchase shares of Select stock owned by petitioner-appellee Frank R. Palumbo ("Palumbo") and (2) if so, the value of those shares. Select argues that the court lacked jurisdiction to order the parties to arbitrate because the parties' contract did not call for arbitration. Second, Select contends that even if the contract required arbitration, the issue whether Select was obligated to purchase Palumbo's shares was not an arbitrable dispute. We find the court had jurisdiction to order the parties to arbitrate, and the issues the court submitted were arbitrable. Therefore, we affirm the common pleas court's decision.
 Proceedings Below {¶ 2} Palumbo's petition to compel arbitration was filed November 20, 2000. It alleged that Select was subject to a close corporation agreement dated September 23, 1992 which was signed by Palumbo and four other founding shareholder/employees. Palumbo owns 1,250 shares of Select's stock.
 {¶ 3} Select terminated Palumbo's employment effective January 12, 2000. Select sent Palumbo a notice indicating that Select was exercising its right under the close corporation agreement to purchase Palumbo's shares at a price per share of $315. Palumbo disputed the price Select proposed to pay.
 {¶ 4} Select contacted Ernst Young, the parties' designated "dispute resolver," to inquire whether it would be willing to arbitrate the dispute. Ernst Young agreed to do so. An initial conference was conducted on August 7, 2000. The parties agreed to make written submissions to the arbitrator by September 18.
 {¶ 5} On August 22, 2000, Select demanded that Palumbo surrender his stock to Select by August 31 at the price Select had previously demanded. When Palumbo refused to do so, the petition alleges that Select "unilaterally refused to participate in the arbitration process that is mandated by the Agreement and that Respondent itself had invoked." Palumbo therefore requested an order directing Select to arbitrate the price per share.
 {¶ 6} A copy of the close corporation agreement was attached to the petition. With respect to the corporation's right to repurchase stock, section 3.4 of the agreement provides:
 {¶ 7} "Upon termination of employment for any reason, with or without cause, the Company shall have the right to repurchase and the employee will sell all Stock and Debentures held by the employee. The price per share shall be determined in accordance with Section 3.15
hereof. Promptly after receipt of certificates and executed stock powers representing all of the employee[']s Stock, the Company will pay the employee in accordance with Section 3.16 hereof. The company shall have the right of set-off as to any advances or other obligations of the employee to the Company."
 {¶ 8} Section 3.15 provides for the calculation of "the purchase price for Stock purchased under this Agreement." There is no provision expressly applicable to the calculation of the price for shares repurchased by Select on termination of employment. Rather, the first two subsections concern the purchase price for (a) option rights arising under sections 3.11 and 3.13 of the agreement because of involuntary transfers and termination of marital relationships, and (b) option rights arising under section 3.12 in the event of the death or mental incompetence of a shareholder. Guidelines are then provided for making a determination of the value of stock in the event of the death or mental incompetence of a shareholder. Section 3.16 provides the terms of payment for stock purchased pursuant to a contractual option.
 {¶ 9} Section 4.10 of the close corporation agreement contains the agreed dispute resolution procedure. It provides:
 {¶ 10} "If any dispute shall arise between the parties concerning the construction of this Agreement or their respective rights and obligations hereunder, the dispute shall be settled by final and binding dispute resolution in accordance with the terms of this Section 4.10. This dispute shall be submitted to Ernst Young, CPAs or their successor, unless Ernst Young declines or a dispute party specifies a conflict of interest on the part of Ernst Young in which event the dispute shall be submitted to Arthur Anderson or then to the next largest national accounting firm which accepts the assignment and does not have a conflict. (Hereinafter the "Dispute Resolver".)[sic] *** Each party may, within ten (10) days after the Dispute Resolver has been accepted by all parties, make one written submission supporting its position. No oral submissions or ex parte conferences or submissions are permitted. The Company shall provide to the Dispute Resolver all information it requests in connection with the dispute. The Dispute Resolver shall agree to issue its decision in writing as soon as possible but in no event later than forty-five (45) days after its acceptance by all parties. All parties shall supply all information requested by the Dispute Resolver. The decision rendered by the Dispute Resolver shall be final and binding and conclusive on all parties concerned and free of challenge or review in any court. The decision so rendered by the Dispute Resolver shall be enforceable by any court of competent jurisdiction. ****"
 {¶ 11} In response to the petition, Select argued that the parties' dispute was beyond the scope of the close corporation agreement because Select had the discretion under the agreement not to repurchase Palumbo's shares, and its decision to withdraw its offer to repurchase was within its discretion. As there is no offer to repurchase, Select argued, there is nothing to arbitrate.
 {¶ 12} Based upon the petition and Select's response, the court found "no issues of material fact remain to be tried and that there exist genuine disputes as to (1) whether, pursuant to the close corporation agreement, respondent is obligated to purchase petitioner's shares and (2) if so, what value those shares represent. Therefore, the petition is well-taken and granted. The arbitration shall occur as directed in section 4.10 of the Agreement. R.C. 2711.03. Final." Select appeals from this order.
 Law and Analysis {¶ 13} Initially, we must decide whether we have jurisdiction to consider Select's appeal. The jurisdictional statutes commonly applicable in an action concerning a contractual arbitration clause, R.C. 2711.02
and 2711.15, do not apply to this case. Palumbo never asked the court for a stay of any court proceedings pending arbitration. Thus, we have no jurisdiction under R.C. 2711.02, which allows us to review a decision to grant or deny a stay of a trial pending arbitration. Nor was this an order confirming, modifying, correcting or vacating an arbitration award, which is appealable under R.C. 2711.15.
 {¶ 14} Nevertheless, the court's decision determined the action to compel arbitration pursuant to R.C. 2711.03 and prevented any further judgment. Compare Bellaire Bd. of Edn. v. Paxton (1979), 59 Ohio St.2d 65
and Schroeder v. Shearson, Lehman Hutton (Apr. 25, 1991), Cuyahoga App. No. 60236 (predating amendments to R.C. 2711.02 and 2505.02). Furthermore, substantial rights were affected by the court's decision. The referral to arbitration has a significant impact on the manner in which the parties' dispute is decided, because the scope of review of an arbitrator's decision is extremely limited. Cf. Young v. Grelles (May 6, 1985), Belmont App. No. 84-B-45. Therefore, we find we have jurisdiction to consider this appeal under R.C. 2505.02(B)(1).
 {¶ 15} Select contends that the alternative dispute resolution ("ADR") procedure to which the parties agreed was not equivalent to arbitration and therefore the court had no jurisdiction to enforce it through R.C. 2711.03. Although this issue was not raised in the common pleas court, Select argues that it is a question of subject matter jurisdiction which may be raised at any time.
Select's argument misses the mark. Ohio courts have held that there is no jurisdiction under R.C. Chapter 2711 to confirm a decision made pursuant to a contractual ADR procedure other than arbitration. See, e.g., Ohio Council 8 v. Ohio Dept. Of Mental Health (1984),9 Ohio St.3d 139.[1] Select argues from this that a court has no jurisdiction under R.C. Chapter 2711 to compel participation in an ADR procedure other than arbitration. However, Select ignores the fact that there may be other means beyond R.C. Chapter 2711 to enforce a contractual agreement to participate in ADR, despite the fact that the result may not be subject to court enforcement. Even if the procedure prescribed in the contract here was not arbitration (as Select argues), the court's general jurisdiction would give the court power to compel specific performance of a contractual agreement to participate in another form of ADR. See Oglebay Norton Co. v. Armco, Inc., (1990),52 Ohio St.3d 232, 237. Thus, even if the ADR procedure prescribed by the parties' contract was not arbitration (a conclusion we do not reach), the court still had jurisdiction to order the parties to proceed with ADR.
 {¶ 16} More important, a court has jurisdiction to determine its own jurisdiction. In re Estate of Boll (1998), 126 Ohio App.3d 507, 508, fn. 1. Hence, the common pleas court had the power to decide whether the contractual provision at issue called for arbitration in order to decide whether it had jurisdiction to compel arbitration.
 {¶ 17} The question whether the parties agreed to arbitrate their disputes is, of course, a matter of contract. The terms of a contract are a question of fact. In the proceedings before the common pleas court, Select admitted that it agreed to arbitrate its contractual disputes with Palumbo. Select specifically conceded that "if it desired to purchase the shares and there was a dispute over the price, that dispute would be arbitrable under § 4.10." This admission eliminated any factual issue as to whether the parties had agreed to arbitrate. The facts before the common pleas court demonstrated that the parties had agreed to arbitrate disputes, so the court had jurisdiction to compel arbitration. Therefore, we overrule the first assignment of error.
 {¶ 18} Second, Select argues that it was not contractually obligated to purchase Palumbo's stock. Therefore, Select contends, it could withdraw its offer to purchase anytime before it was accepted by Palumbo, and the withdrawal of its offer eliminated any arbitrable issue.
 {¶ 19} This analysis depends on Select's characterization of the repurchase transaction as an "offer" which could be withdrawn at any time before it was "accepted." However, this characterization is suspect: If Select chooses to repurchase the shares, Palumbo is required to sell them. The only issue is the purchase price. Accordingly, we find no error in the common pleas court's order to arbitrate the issue whether Select has the power to withdraw a demand for repurchase, once made.[2] The dispute plainly concerns the construction of the agreement and the parties' respective rights and obligations thereunder, and accordingly is arbitrable under section 4.10 of the parties' agreement.
Judgment affirmed.
Anne L. Kilbane, P.J. and Sean C. Gallagher, J. concur.
[1] This court has previously held it was error for the common pleas court to compel arbitration when the parties only agreed to mediate their dispute. Oliver Design Group v. Westside Deutscher Frauen-Verein, Cuyahoga App. No. 81120, 2002-Ohio-7066. The question whether the court had jurisdiction to compel mediation was not raised or decided, however.
[2] Such a power would effectively place Select in control of the purchase price, because Select could withdraw a demand for repurchase if the shareholder challenged the purchase price proposed by Select.