[Cite as *Seyfried v. O'Brien*, 2017-Ohio-286.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 104212

## JAMES SEYFRIED

PLAINTIFF-APPELLANT

vs.

## PATRICK O'BRIEN, JR., CHEVROLET, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-753162

**BEFORE:** McCormack, P.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** January 26, 2017

**ATTORNEYS FOR APPELLANT**

Rosemary Taft-Milby
Michael Berler
Ronald I. Frederick
James Wertheim
Frederick & Berler L.L.C.
767 East 185th Street
Cleveland, OH 44119


**ATTORNEYS FOR APPELLEE**

Christopher A. Tipping
Harry A. Tipping
Harold M. Schwarz, III
Stark & Knoll Co. L.P.A.
3475 Ridgewood Road
Akron, OH 44333

TIM McCORMACK, P.J.:

{¶1}    James Seyfried's estate ("appellant" hereafter) appeals from a judgment of the Cuyahoga County Court of Common Pleas that granted a motion to stay pending arbitration in a consumer complaint.    The trial court found James Seyfried signed a valid and enforceable arbitration agreement regarding his purchase of a Chevrolet Cobalt.    We affirm.

**Substantive Facts and Procedural History**

{¶2}    Seven years ago, on June 11, 2009, Seyfried went to a Chevrolet dealership to purchase a used automobile.    With the help of a salesman, James Stewart, he selected a used 2009 Chevrolet Cobalt.    Stewart prepared a handwritten "Buyer's Order" for the Cobalt, which Seyfried signed.    To be allowed to take immediate possession of the vehicle before he secured financing, Seyfried also signed a "Conditional Delivery Agreement."    That agreement allowed him to cancel his purchase if third-party financing could not be obtained within three days.    Seyfried also signed a Used Vehicle Customer Satisfaction Guarantee, which allowed him to cancel the deal within three days or 150 miles, if he was dissatisfied with the vehicle for any reason.

{¶3}    The next day, on June 12, 2009, Seyfried executed several more documents in connection with his purchase of the Cobalt.    He signed an Agreement to Binding Arbitration ("the arbitration agreement").    The agreement stated that "Binding arbitration shall include all disputes * * * arising out of or in any way related to this consumer transaction.    Binding arbitration shall be used to resolve all claims arising

from the purchase * * * of the vehicle * * * or any document or relationship established in this transaction or related transaction regardless of whether the transactions were consummated." Before the signature line, there was a bolded warning in a larger font and in capital letters: "READ BEFORE SIGNING. DO NOT SIGN THIS DOCUMENT BEFORE YOU HAVE READ IT AND UNDERSTAND ITS CONTENTS. ARBITRATION IS NOT REQUIRED FOR THE PURCHASE OR FINANCING OF YOUR VEHICLE."

{¶4} Raymond Cieslak, the dealership's finance representative, testified that he reviewed the arbitration agreement with Seyfried and explained that if there was any dispute between him and the dealership, the dispute would go through a third-party arbitrator as opposed to the courts. Seyfried gave no indication he did not understand the arbitration agreement, expressed no objection, and signed the agreement voluntarily.

{¶5} Seyfried then signed a purchase contract for the Cobalt.[1] Paragraph 14 of the purchase contract stated: "If this vehicle is being delivered prior to finance approval, buyer shall have 72 hours in which to secure or meet finance approval. Buyer will assume full responsibility for all wear, tear and/or damage during this period and will return vehicle in same condition at the end of the 72 hours, if finance approval is not met."

---

[1]Under the purchase contract, the total balance for the used Cobalt was $16,902. It included a sale price of $13,500, $399 in theft protection, service contract fee of $1,010, "GAP" care fee of $595, and other miscellaneous charges, offset by a trade-in credit of $750.

**{¶6}** There was a two-sentence clause regarding arbitration in the purchase contract and below the clause was a separate signature line. The sentence stated, "I agree that any dispute from this transaction will go to arbitration and I have executed a detailed arbitration agreement which is fully incorporated herein. Arbitration is not required for the purchase or financing of your vehicle." The signature line was left blank in the purchase contract (and in subsequent purchase contracts signed by Seyfried relating to his purchase of the Cobalt).

**{¶7}** On June 12, 2009, Seyfried also signed a loan agreement with Firefighters Community Credit Union to finance the purchase of the vehicle. Seyfried, however, failed to be approved for financing from the credit union. He did not cancel the transaction within three days, but instead kept the vehicle. To help him obtain financing from First Merit, Chevrolet's financing company, Chevrolet increased the value for his trade-in vehicle to $1,950 (but also increased the "GAP" care fees) and reduced the total unpaid balance, and Seyfried signed another purchase contract on June 26, 2009, with the reduced balance.[2]

**{¶8}** On April 13, 2011, Seyfried filed the instant class action complaint. The complaint named as defendants four Patrick O'Brien Chevrolet entities (Patrick O'Brien Jr. Chevrolet, Inc., Patrick O'Brien, Jr. Chevrolet II, Inc., Patrick O'Brien, Jr. Chevrolet III, Inc., Patrick O'Brien, Jr. Chevrolet IV, Inc.), Patrick O'Brien, Jr., and Patrick O'Brien

---

[2]Seyfried signed another purchase contract on July 2, 2009, backdated to June 26, with a further reduced balance of $15,058.36.

Sr. (collectively as "Chevrolet" hereafter), and First Merit (who was subsequently dismissed from the lawsuit). The complaint alleged the defendants failed to disclose to buyers of a used vehicle that the vehicle had been used as a rental vehicle, in violation of the Consumer Sales Practices Act, R.C. 1345.02. Seyfried passed away in 2012, and his estate was substituted as plaintiff. Apparently, the only asset in the estate is an interest in the instant lawsuit.

{¶9} Chevrolet moved to stay the proceeding pending arbitration pursuant to R.C. 2711.02. The trial court granted plaintiff's request for discovery regarding the validity of the arbitration agreement. On November 17, 2015, the trial court held a hearing on Chevrolet's motion. James Stewart, the sales person involved in the subject transaction, Raymond Cieslak, the finance representative, and Debbie Kidwell, Seyfried's former fiancée, testified at the hearing. After the hearing, appellant submitted a brief opposing the motion to stay, advancing two arguments: (1) the purchase contract was fully integrated and it did not incorporate the arbitration agreement, and (2) the arbitration agreement was substantively and procedurally unconscionable.

{¶10} The trial court found, as a factual matter, that Seyfried signed a binding arbitration agreement and it granted Chevrolet's motion to stay pending arbitration. The court's judgment entry stated:

> The parties conducted discovery on the issue of whether a valid arbitration
>
> agreement exists between the parties and on 11/17/2015 a hearing was held.
>
> The court has duly considered the evidence admitted at the hearing as well

as the arguments and post hearing briefs submitted by the parties. As a factual matter, the court finds that on 6/12/2009 plaintiff James Seyfried signed an agreement to binding arbitration. The court further finds that agreement entered to be valid and enforceable.

**Appeal**

{¶11} Appellant raises one assignment of error, which states:

The trial court erred in finding the stand-alone arbitration agreement valid and enforceable in light of Ohio law requiring that all terms of a motor vehicle contract to be contained in one writing, in light of Ohio contract law that a separate agreement is unenforceable when a contract is a fully self-integrated document with a merger clause and its own unsigned arbitration provision, and where the purported arbitration agreement is unconscionable.

{¶12} Appellant argues, for the first time on appeal, that the June 12, 2009 arbitration agreement was not valid because R.C. 4517.26 requires a sale of a motor vehicle "be preceded by a written instrument or contract that shall contain all of the agreements of the parties and shall be signed by the buyer and the seller." Appellant claims that, under the statute, the arbitration agreement must be part of a single document in order to be enforceable.

{¶13} "A party may not change its theory of the case and present new arguments for the first time on appeal." *Tokles v. Black Swamp Customs, L.L.C.*, 6th Dist. Lucas

No. L-14-1105, 2015-Ohio-1870, citing *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992). "[A]rguments raised for the first time on appeal will not be considered by an appellate court." *Gardi v. Bd. of Edn.*, 8th Dist. Cuyahoga No. 99414, 2013-Ohio-3436, ¶ 27, citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997).

{¶14} Appellant had ample opportunity to raise the argument based on R.C. 4517.26 before the trial court, but it did not. We decline to review an issue raised for the first time on appeal.

{¶15} Rather, the main question we answer in this appeal is whether, as the trial court found, Seyfried consented to arbitration regarding his purchase of the Cobalt. Although it is undisputed that Seyfried signed an arbitration agreement, appellant argues the executed arbitration agreement had no legal effect.

{¶16} As in all appeals concerning arbitration, we begin our review with the recognition that both the Ohio General Assembly and the courts have expressed a strong public policy favoring arbitration. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15. Arbitration is favored because it provides the parties "with a relatively expeditious and economical means of resolving a dispute." *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712, 590 N.E.2d 1242 (1992).

{¶17} Under R.C. 2711.02, a court may stay trial of an action upon application of a party "if (1) the action is brought upon any issue referable to arbitration under a written agreement for arbitration, and (2) the court is satisfied the issue is referable to arbitration

under the written agreement." *Austin v. Squire*, 118 Ohio App.3d 35, 37, 691 N.E.2d 1085 (9th Dist.1997), citing *Jones v. Honchell*, 14 Ohio App.3d 120, 122, 470 N.E.2d 219 (12th Dist.1984).

{¶18} Varying standards of review have been applied in arbitration matters. As this court observed, "'[w]hen addressing whether a trial court has properly granted a motion to stay litigation pending arbitration, this court applies an abuse of discretion standard.'" *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7, quoting *U.S. Bank, N.A. v. Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-263, ¶ 13. *See also Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212; *Butcher v. Bally Total Fitness Corp.*, 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734, ¶ 23 (generally the standard of review of whether a trial court properly grants a motion to stay pursuant to R.C. 2711.02 is an abuse of discretion); *Carter Steel & Fabricating Co. v. Danis Bldg. Constr. Co.*, 126 Ohio App.3d 251, 254, 710 N.E.2d 299 (3d Dist.1998); *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 410, 701 N.E.2d 1040 (3d Dist.1997). On the other hand, when reviewing the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration, a de novo standard applies. *McCaskey* at ¶ 7, citing *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393 (8th Dist.). Similarly, a de novo standard applies in a claim of unconscionability of an arbitration clause. *McCaskey* at ¶ 8, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12. Under either standard of review, when

a trial court makes factual findings surrounding the making of an arbitration agreement, the factual finding should be accorded appropriate deference. *Taylor Bldg.* at ¶ 2, 37.

**Whether Seyfried Agreed to Arbitration**

{¶19} To determine whether a party has agreed to arbitrate, the courts apply ordinary principles that govern the formation of contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In order for a valid contract to exist, there must be mutual assent on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance of the offer, and consideration. *Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 521, 758 N.E.2d 678 (1st Dist.2001). "[Q]uestions of contract formation and intent remain factual issues to be resolved by the fact finder after careful review of the evidence." *One Hundred Forty Realty Co. v. England*, 2d Dist. Montgomery No. 10189, 1987 Ohio App. LEXIS 10263 (Dec. 23, 1987), citing *Mead Corp. v. McNally-Pittsburgh Mfg. Corp.*, 654 F.2d 1197, 1206 (C.A.6 1981). Specifically, the question of whether the parties agreed to arbitrate their disputes is a matter of contract and the terms of a contract are a question of fact. *Palumbo v. Select Mgt. Holdings, Inc.*, 8th Dist. Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18.

{¶20} Here, Seyfried signed an agreement to binding arbitration on June 12, 2009. That agreement identified the vehicle by its reference to the June 11, 2009 Buyer's Order. The agreement stated, in unambiguous terms, that the consumer agreed to arbitrate all disputes "arising out of or in any way related to this consumer transaction"

and "all claims arising from the purchase    * * * of the vehicle * * * or any documents * * * in this transaction or related transaction * * *."    Cieslak testified he reviewed the arbitration agreement with Seyfried and explained the nature of arbitration, and Seyfried signed the agreement voluntarily.   Appellant, however, claims Seyfried did not consent to arbitration because in the purchase contract Seyfried left the signature line blank below the two-sentence arbitration clause that acknowledged an execution of a separate arbitration agreement.

{¶21} Appellant essentially claims that Seyfried executed an agreement to arbitration and immediately revoked his consent, a claim supported only by a lack of signature acknowledging the separately executed arbitration agreement.   In finding that Seyfried had agreed to arbitration, the trial court did not consider Seyfried's omission of an acknowledgment of executing a separate arbitration agreement moments earlier fatal to his consent to arbitration.   The trial court recognized the incongruity of appellant's claim and gave effect to the arbitration agreement after an evidentiary ruling.   We will give deference to the finding.[3]

---

[3]Appellant relies heavily on the lack of signature under the arbitration clause in the purchase agreement in its claim that Seyfried did not consent to arbitration.  We note that although the presence of a signature evinces consent to arbitration, the lack of a signature does not in itself show that a party has not consented to arbitration.  The courts have long observed that for an arbitration agreement to be enforceable, R.C. Chapter 2711 requires only that the arbitration agreement be in writing, because there are no provisions in the chapter requiring the written agreement to be signed.  Rather, the courts have applied ordinary contract principles to determine if a party is bound by an arbitration agreement absent a signature.   *Brumm v. McDonald & Co. Sec., Inc.*, 78 Ohio App.3d 96, 102-103, 603 N.E.2d 1141 (4th Dist.1992). *See also Ross v. Bridgewater Constr., Inc.*, 6th Dist. Lucas No. L-03-1029, 2003-Ohio-6199.

**Integration**

{¶22} Appellant argues that because the purchase contract had a merger clause, it was a fully integrated document and it superseded the separately executed arbitration agreement.

{¶23} The courts have long recognized whether a contract is integrated is not dependent upon the existence of an integration clause; "'[t]he presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing.'" *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 11, quoting *Galmish v. Cicchini*, 90 Ohio St.3d 22, 28, 734 N.E.2d 782 (2000).

{¶24} Appellant alleges that Seyfried signed the purchase contract after he signed the arbitration agreement and attributes great significance to that temporal sequence. However, by all accounts, the two documents were executed moments apart, not separated by any meaningful lapse of time. Therefore, the two documents should be more appropriately considered as multiple documents executed as part of a transaction. "As a general rule of construction, a court may construe multiple documents together if they concern the same transaction." *Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 314, 511 N.E.2d 106 (1987). "[A]ll writings that are a part of the same transaction should be interpreted together, and effect should be given to every provision of every writing." *Prudential Ins. Co. of Am. v. Corporate Circle*, 103 Ohio App.3d 93, 98, 658 N.E.2d 1066 (8th Dist.1995), citing *Abram & Tracy, Inc. v. Smith*, 88 Ohio App.3d 253, 623

N.E.2d 704 (10th Dist.1993). "[W]ritings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997).

{¶25} The contemporaneous nature of Seyfried's execution on June 12, 2009, of the arbitration agreement and the purchase contract reflects they were documents executed in the same transaction. The purchase agreement was supplemented by the arbitration agreement. The arbitration agreement executed by Seyfried would be completely meaningless if it is not construed as such. When the two documents are read together, the purchase contract did not supersede the contemporaneously executed arbitration agreement despite the merger clause.

**Whether the Arbitration Agreement Governs Subsequent Purchase Contract**

{¶26} Appellant also argues the arbitration agreement signed in conjunction with the purchase contract on June 12, 2009, did not bind Seyfried to arbitration because the earlier purchase contract had "expired" and Seyfried entered into a new transaction on June 26, 2009, without executing another arbitration agreement on that occasion.

{¶27} Appellant's claim lacks merit. The June 12 and June 26 purchase contracts concerned the same vehicle transaction — they were substantially similar except for the higher trade-in value of Seyfried's old vehicle and higher "GAP" care fees in the latter contract. Appellant claims in its brief on appeal that the June 11, 2009 purchase contract was contingent and it was "not binding unless accepted by seller and credit is approved,"

pointing us to paragraph 14 of the purchase agreement. Our review of paragraph 14 shows that it stated only that if the buyer did not obtain financing within three days, the buyer was to return the vehicle to the dealership. Although Seyfried *could* return the Cobalt and cancel the transaction when he was unable to obtain the financing within three days, he did not cancel the transaction — he retained the Cobalt despite his inability to obtain financing. Therefore, the June 26, 2009 purchase contract did not relate to a *new* transaction. It modified slightly the previous contractual terms, raising the trade-in value and the "GAP" care fees but was otherwise substantially similar to the June 12, 2009 purchase agreement. These documents related to the same vehicle transaction. By the clear terms of the arbitration agreement Seyfried executed on June 12, 2009, Seyfried consented to arbitration for all claims arising out of his purchase of the Cobalt.

**Unconscionability**

{¶28} Seyfried also claims the arbitration agreement was both substantively and procedurally unconscionable, citing this court's en banc opinion in *Devito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194 (8th Dist.).

{¶29} Unconscionability embodies two separate concepts: (1) substantive unconscionability, referring to "unfair and unreasonable contract terms," and (2) procedural unconscionability, referring to "individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible." *Collins v. Click Camera & Video*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993).

{¶30} In *Devito,* the arbitration agreement contained a loser-pay provision that required the nonprevailing party to pay the prevailing party's arbitration costs and expenses, including attorney fees. Its shifting of the financial burden to the consumer sharply departed from the established consumer-related arbitration procedure. A majority of this court, recognizing that arbitration is the preferred forum, held that the arbitration agreement was valid and enforceable once the loser-pay provision was excised from the arbitration agreement.[4] The instant arbitration agreement did not contain a cost-shifting loser-pay provision. *DeVito* is distinguishable.

{¶31} Appellant also claims the arbitration agreement is unconscionable because it does not contain information about the consumer's "loss of appeal rights," citing *Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500. *Felix*, however, does not stand for the proposition that a lack of information about a consumer's "loss of appeal rights" rendered an arbitration agreement unconscionable. *Felix* involved a one-paragraph arbitration provision embedded in a purchase contract.[5] This court found the one-paragraph provision substantively

---

[4]The majority was split however regarding whether the inclusion of the loser-pay provision rendered the arbitration agreement substantively and procedurally unconscionable. Only three of the seven judges forming the majority concluded that the loser-pay provision rendered the arbitration agreement substantively and procedurally unconscionable.

[5]The arbitration in *Felix* states, in its entirety "Arbitration — Any dispute between you and dealer (seller) will be resolved by binding arbitration. You give up your right to go to court to assert your rights in this sales transaction (except for any claim in small claims court). Your rights will be determined by a neutral arbitrator, not a judge or jury. You are entitled to a fair hearing, but arbitration procedures are simpler and more limited than rules applicable in court. Arbitrator decisions are as enforceable as any court order and are subject to a very limited review by a court. See general

unconscionable because it did not divulge any details about the arbitration process. In *Wilkens*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-1038, this court distinguished *Felix*, finding the one-page separate arbitration agreement in that case valid because it contained significantly more information than the short arbitration clause in *Felix*. *Id.* at ¶ 23-26.

**{¶32}** Similarly here, we distinguish *Felix*. Chevrolet's arbitration agreement was in a separate document clearly identified in bold print and capital letters as "AGREEMENT TO BINDING ARBITRATION" and it provided much more information about the arbitration process than the short arbitration clause in *Felix*. The arbitration agreement here stated that the purchaser agreed to voluntarily "waive any right to a trial in any state or federal court to resolve any dispute and will submit any dispute to binding arbitration." It warned the consumer that "[n]o claim submitted to arbitration is heard by a jury and no claim may be brought as a class action * * *." Unlike the arbitration clause in *Felix* that directed any questions about the arbitration process to the "general manager," the agreement here stated the arbitration will be governed by the American Arbitration Association and provided information about the arbitration procedure. It also stated in bold print and in capital letters immediately before the signature line: "READ BEFORE SIGNING. DO NOT SIGN THIS DOCUMENT BEFORE YOU HAVE READ IT AND UNDERSTAND ITS CONTENTS. ARBITRATION IS NOT REQUIRED FOR THS PURCHASE OR FINANCING OF YOUR VEHICLE." *Felix* is distinguishable.

---

manager for information regarding arbitration process."

**{¶33}** Finally, appellant makes a vague claim regarding the unconscionability of the cost provision in the instant arbitration agreement. The arbitration agreement stated: "This dealership will pay for the purchaser's portion of the arbitrator's compensation up to $125, beyond this amount the purchaser is responsible for any additional arbitration fees, costs and expenses." Unlike *DeVito*, this provision does not require the consumer to pay should the consumer lose.[6] "Courts have consistently recognized that given the strong public policy in favor of arbitration, a court shall not deem an arbitration clause unconscionable simply because it imposes higher fees than filing a complaint in the trial court." *Sikes v. Ganley Pontiac Honda, Inc.*, 8th Dist. Cuyahoga No. 82889, 2004-Ohio-155, ¶ 21, citing *Dunn v. L&M Bldg.*, 8th Dist. Cuyahoga No. 77399, 2000 Ohio App. LEXIS 4954 (Oct. 26, 2001). Appellant argues in a cursory manner that the arbitration cost imposed here has a chilling effect of deterring appellant from bringing a claim, yet presented no authenticated document or sworn testimonial evidence to substantiate its claim. As such, the claim is without merit.

**{¶34}** Under the circumstances of this case, the trial court properly granted appellee's motion to stay the matter pending arbitration. Appellant's assignment of error lacks merit.

**{¶35}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

---

[6] In *DeVito*, the loser-pay provision stated, "The non-prevailing party shall pay, and the arbitrators shall award the prevailing party's arbitration costs and expenses, including reasonable attorney's fees."

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR