[Cite as *Kolosai v. Azem*, 2019-Ohio-66.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102920**

---

**PAULETTE KOLOSAI, ADMINISTRATOR
OF THE ESTATE OF NICHOLAS GIANCOLA**

PLAINTIFF-APPELLANT

vs.

**HAITHAM MOUAID AZEM, M.D., ET AL.**

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-806065

**BEFORE:** Laster Mays, J., Kilbane, A.J., and Stewart, J.*

**RELEASED AND JOURNALIZED:** January 10, 2019

---

\* Editor's Note: Judge Melody J. Stewart participated in this ruling before her resignation from this court.

-i-

**ATTORNEYS FOR APPELLANT**

Mark A. DiCello
Mark Abramowitz
Robert F. DiCello
Justin Hawal
The DiCello Law Firm
7556 Mentor Avenue
Mentor, Ohio 44060

Jacques G. Balette
Marks, Balette & Giessel, P.C.
10000 Memorial Drive, Suite 760
Houston, Texas 77024


**ATTORNEYS FOR APPELLEES**

Rita A. Maimbourg
Jane F. Warner
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Leslie Moore Jenny
Jason P. Ferrante
Kenneth W. McCain
Marshall Dennehey Warner Coleman & Goggi
127 Public Square, Suite 3510
Cleveland, Ohio 44114

ANITA LASTER MAYS, J.:

## I.     INTRODUCTION

{¶1}     The instant appeal is before us pursuant the Ohio Supreme Court's decision in *Giancola v. Azem*, Slip Opinion No. 2018-Ohio-1694 ("*Kolosai III*"). The court heard an appeal from this court's decision in *Kolosai v. Mouaid*, 8th Dist. Cuyahoga No. 102920, 2016-Ohio-5831 ("*Kolosai II*"), where we held that the law-of-the-case doctrine, based on our

decision in *Kolosai v. Azem*, 8th Dist. Cuyahoga No. 100890, 2014-Ohio-4474 ("*Kolosai I*"), barred our consideration of the assigned errors set forth in *Kolosai II*. The Ohio Supreme Court disagreed and remanded the case for review of the assigned errors.

## II. BACKGROUND AND FACTS

{¶2} Paulette Kolosai ("Kolosai"), administrator of the estate of Nicholas Giancola ("Nicholas"), is the plaintiff-appellant in this nursing home negligence and wrongful death case against defendants-appellees Cleveland Healthcare Group, Inc., Walton Manor Health Care Center, Saber Healthcare Group, L.L.C., Saber Healthcare Holdings, L.L.C., and Saber Healthcare Foundation (collectively "Walton Manor") and Haitham Mouaid Azem, M.D. ("Azem"). The pending question is whether the trial court properly determined that Nicholas signed the Walton Manor arbitration agreement that would result in a stay of the wrongful death action pending arbitration.

{¶3} Kolosai filed this action against appellees on April 29, 2013, as amended on July 11, 2013, claiming: (1) corporate negligence; (2) corporate recklessness/willfulness; (3) medical negligence; (4) gross negligence; (5) resident rights violations; (6) wrongful death; and (7) survivorship damages. Walton Manor responded to the complaint by filing an answer on July 23, 2013. The answer included a number of affirmative defenses; however, there was no defense referencing an arbitration agreement or lack of jurisdiction though there was a reference to failure to comply with the admission agreement.

{¶4} On August 27, 2013, Walton Manor filed a motion to stay the proceedings pending arbitration, asserting that Nicholas signed a Resident and Facility Arbitration Agreement ("Arbitration Agreement"). Kolosai argued that the deposition testimony of Walton Manor's

witness and former employee, Stephanie Lewis McCaulley ("Lewis"), who admitted Nicholas to the nursing home and signed the Arbitration Agreement as the facility representative, established that Nicholas's mother, Rose Giancola ("Rose") executed the Arbitration Agreement without authority to do so, thus rendering it unenforceable.

{¶5} Though Rose was admitted to Walton Manor just a few weeks after Nicholas,[1] no documents containing Rose's signature were presented to the trial court supporting Walton Manor's argument that Nicholas signed the agreement.
Instead, Walton Manor relied on the copy of the Arbitration Agreement containing a signature above the name of Nicholas. Walton Manor also argued that Lewis's testimony was vague and was not based on actual knowledge.

{¶6} The trial court decided that Rose signed the Arbitration Agreement on behalf of Nicholas with apparent authority to do so and granted the stay as to Counts 1-5 and 7. The wrongful death claim set forth in Count 6 was retained for further proceedings on the ground that a decedent cannot bind beneficiaries to arbitration in a wrongful death claim. *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, 873 N.E.2d 1258, ¶ 19.

{¶7} On January 15, 2014, Kolosai appealed the trial court's order in *Kolosai v. Azem,* 8th Dist. Cuyahoga No. 100890, 2014-Ohio-4474 ("*Kolosai I*"). Kolosai argued that the trial court erred in granting the stay and holding that Rose signed the Arbitration Agreement, which would render it unenforceable, yet determining the Arbitration Agreement was, in fact, enforceable under the doctrine of apparent authority, an argument that was not offered by either

---

[1] Nicholas was admitted on October 28, 2011. Rose was admitted on November 21, 2011. Both Rose and Nicholas are now deceased.

party.   Walton Manor at no point during the trial court proceedings offered evidence to support its argument that Nicholas signed the Arbitration Agreement.

{¶8}   While advocating before this court on appeal, Walton Manor proffered documents that were not part of the record.   The documents consisted of Rose's admission documents that had been in Walton Manor's possession since Rose was admitted to the facility in 2011.   The documents had never been introduced as evidence.   Walton Manor claimed that the documents "were not available due to the lack of discovery prior to the Motion to Stay."   Appellee's Brief at 2.   *Kolosai I* at ¶ 4.

{¶9}   We noted in our opinion that, while new evidence could not be entertained by this court, the submission of the additional documentation to support the premise that Nicholas signed the Arbitration Agreement effectively confirmed Kolosai's position that the trial court's finding of apparent authority was erroneous.   This court also rejected Walton Manor's fall-back position offered during the appeal that the trial court properly granted the stay based on the doctrine of apparent authority because it directly conflicted with their contrary argument that Nicholas signed the Arbitration Agreement.[2]   *Id*. at ¶ 9-10.

{¶10}   Thus, we sustained Kolosai's first assignment of error that:
The trial court abused its discretion in finding the Arbitration Agreement was enforceable due to apparent agency principles.   The trial court should not have relied upon this theory because it was an erroneous interpretation of fact and not addressed in the motion to stay and enforce the binding Arbitration Agreement.

---

[2]   "Walton Manor hedges its argument by claiming that even if we ignore its new evidence on appeal, the apparent agency theory was appropriately relied upon by the court under the circumstances, thus providing sufficient justification for its decision to enforce the arbitration agreement." *Kolosai I* at ¶ 9.

In light of the trial court's improper reliance on the apparent authority principle, this court reversed and remanded the case "for further proceedings consistent with the opinion." *Id*. at ¶11.

{¶11} Walton Manor filed a renewed motion to stay arbitration on December 12, 2014. Attached to the motion were copies of Rose's admission documents that were improperly proffered during the oral argument in *Kolosai I* and a December 4, 2014 letter, on Speckin Forensic Laboratories letterhead that was signed by Forensic Document Analyst Robert D. Kullman ("Kullman").[3] Kullman opined that, based on his review of documents that contained the signatures of Nicholas and Rose, (1) the signatures on the copies of Nicholas's admission and arbitration agreements were probably written by the same person, to a reasonable degree of scientific certainty; and (2) the signatures on those agreements, compared with documents containing Rose's signature were, to a reasonable degree of scientific certainty, not written by the same person.

{¶12} Kolosai replied on December 19, 2014, that the law-of-the-case doctrine applied because *Kolosai I* determined that the Arbitration Agreement that the trial court held was signed by Rose was not enforceable because apparent authority did not apply. Kolosai offered that the impact of the *Kolosai I* decision required the trial court to lift the stay and move forward with the case on the merits.

{¶13} Kolosai also argued that: (1) Walton Manor failed to submit Rose's information during the initial proceedings though it had been in their possession since November

---

[3] The document also states that a curriculum vitae with Kullman's last four years of testimony is attached, but it is not a part of the court filing.

2011; (2) due to the law-of-the-case, the motion should have been made under Civ.R. 60(B); (3) Walton Manor waived the right to a stay by conducting the depositions of Nathan and Vanessa Giancola on the merits of the case; and (4) Kullman's report was unreliable because it failed to meet the *Daubert*[4] test for expert qualifications and reliability under Evid.R. 702 as set forth in *Walker v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 100759, 2014-Ohio-4208.

{¶14} The trial court held an evidentiary hearing on February 27, 2015. Prior to the hearing, Walton Manor filed a Notice of Filing of the Affidavit of Robert Kullman setting forth his forensic findings, a copy of Kullman's report submitted with Walton's Manor's initial motion, Kullman's curriculum vitae, and copies of the documents that Kullman relied on in forming his opinion. Kolosai objected that the documents were handed to Kolosai's counsel only two hours before the hearing.

{¶15} At the hearing, Walton Manor said the law firms had been in discussions since 2013 regarding obtaining a release for Rose's forms due to Health Insurance Portability and Accountability Act ("HIPAA") concerns preventing revelation until Kolosai provided a signed release on April 23, 2014.[5] Walton Manor advised that its position had always been that Nicholas signed the documents.

{¶16} Kolosai reiterated that HIPAA had not prevented the release of Rose's signature that had been in Walton Manor's possession since 2011 and that the law-of-the-case should apply. Kolosai also disputed the efficacy of Kullman's affidavit and argued that Kolosai had no

---

[4] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[5] In *Kolosai I*, Walton Manor's explanation was that the documents were not available until the appellate proceedings due to the lack of discovery during the motion to stay.

opportunity to conduct discovery, secure a rebuttal expert, or cross-examine Kullman, a paid biased witness.

**{¶17}** Kolosai also complained that Walton Manor withheld Nicholas's admission records until 20 minutes before the deposition of Lewis. The records included a checklist that indicated Rose signed Nicholas's documents, including the Arbitration Agreement. In spite of Lewis's testimony that documents were presented to Rose, Walton Manor refused to withdraw the motion to stay.

**{¶18}** The trial court determined that, based on the opinion of the expert, as well as exhibits, Nicholas signed the Arbitration Agreement and granted the stay. The trial court pointed out that Kolosai failed to rebut the Kullman report and exhibits submitted by Walton Manor, and that

> Plaintiffs' post-hearing brief includes a motion to strike Kullman's affidavit, because, in part, "he ignores the plain [fact] that * * * *this court has already ruled that Rose Giancola signed the arbitration agreement." However, as stated, that ruling was reversed by the Court of Appeals.* Accordingly, plaintiffs' motion to strike is denied. Upon remand, defendants' renewed motion to stay proceedings and compel/enforce arbitration is granted.

(Emphasis added.) Journal entry No. 88549382 (Mar. 30, 2015).

**{¶19}** Kolosai appealed and we determined in *Kolosai II* that the trial court was bound by the law-of-the-case doctrine based on our opinion in *Kolosai I*. Appellees appealed our decision and the Ohio Supreme Court concluded:

> The law-of-the-case doctrine provides that legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). The decision of the appellate court in the first appeal in this case was limited to whether Nicholas Giancola's mother had apparent authority to sign an arbitration agreement on behalf of her son. Therefore, the law-of-the-case

from the first appeal was not relevant in the second appeal, because on remand from the first appeal, the trial court had relied on new evidence to decide that Giancola had signed the arbitration agreement. We reverse the Eighth District's judgment, which was based on the law-of-the-case doctrine, and we remand the matter to that court for review of the assignments of error that were not considered.

*Kolosai III* at ¶ 1.

## III.    ASSIGNMENTS OF ERROR

I.       The trial court abused its discretion by ruling against the clear manifest weight of the evidence.

II.      It was error for the trial court to consider the affidavit of defendants' expert, previously undisclosed, in ruling on defendants' renewed motion to compel arbitration.

III.     The trial court erred by reversing its earlier ruling finding that Rose Giancola signed the arbitration agreement.

## IV.    LAW AND ANALYSIS

### A.    Manifest Weight

{¶20}   The trial court initially determined that Rose signed the Agreement on behalf of Nicholas with apparent authority.   Kolosai argues that the trial court's subsequent determination that Nicholas signed the agreement based on a signature comparison with the allegedly newly discovered form containing the signature of Rose is not supported by the manifest weight of the evidence.

{¶21}   When reviewing the manifest weight of the evidence, we

weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.   *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-20.   We are guided by the presumption that the trial court's findings were correct and will not reverse the

trial court's judgment if it is supported by some competent, credible evidence going to all the essential elements of the case. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

*OneWest Bank, N.A. v. Unknown Heirs*, 8th Dist. Cuyahoga No. 104503, 2016-Ohio-8159, ¶ 14.

**{¶22}** The Ohio Supreme Court has steadfastly maintained that, "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986). *See also Acad. of Med. v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 11-14 (in order for an arbitration agreement to be enforceable, the agreement must apply to the disputed issue), and *Ghanem v. Am. Greetings Corp.*, 8th Dist. Cuyahoga No. 82316, 2003-Ohio-5935, ¶ 12.

**{¶23}** An appellate court applies the principles that govern contract formation in deciding whether a party has agreed to arbitrate. We look for "mutual assent on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance of the offer, and consideration." *Seyfried v. O'Brien,* 2017-Ohio-286, 81 N.E.3d 961, ¶ 19 (8th Dist.)*, citing Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 521, 758 N.E.2d 678 (1st Dist.2001).

> "[Q]uestions of contract formation and intent remain factual issues to be resolved by the fact finder after careful review of the evidence." *One Hundred Forty Realty Co. v. England*, 2d Dist. Montgomery No. 10189, 1987 Ohio App. LEXIS 10263 (Dec. 23, 1987), citing *Mead Corp. v. McNally-Pittsburgh Mfg. Corp.*, 654 F.2d 1197, 1206 (C.A.6 1981). Specifically, the question of whether the parties

agreed to arbitrate their disputes is a matter of contract and the terms of a contract are a question of fact. *Palumbo v. Select Mgt. Holdings, Inc.,* 8th Dist. Cuyahoga No. 82900, 2003-Ohio-6045, ¶ 18.

*Id*. at ¶ 19.

**{¶24}** In *Kolosai I*, Walton Manor asserted in the trial court that Nicholas signed the agreement but, (1) failed to proffer evidence in support of its position either initially or in rebuttal, and (2) failed to file a cross-appeal in *Kolosai I* challenging the trial court's finding that Rose signed the agreement. In light of the dearth of evidence, the trial court determined, based on the testimony of the Walton Manor representative that was present with Nicholas and Rose when Nicholas's admission documents were signed, that Rose signed the agreement with apparent authority.

**{¶25}** The "new evidence" consisted of the expert opinion that accompanied the renewed motion to stay pending arbitration upon remand by this court. The opinion was, in turn, based on the expert's review of more "new evidence" consisting of an admission document from Walton Manor's files, executed by Rose in 2011 when she was admitted to Walton Manor's facility just weeks after the admission of Nicholas.

**{¶26}** Kolosai points to the October 29, 2013 deposition testimony of Lewis to support Kolosai's position that Nicholas did not sign the documents. Lewis, who was working for a different employer by the time of the deposition, served as a social service designee at Walton Manor in March of 2011. Lewis handled the admission process for Nicholas.

**{¶27}** The admission coordinator prepared the admission packet along with a checklist indicating what information was required for the admission such as whether the prospective resident had a health care power of attorney and an attorney-in-fact who may execute the

documents on the resident's behalf. Lewis would usually highlight or place an "X" at the areas that required signatures. Lewis explained that she did not insert the typewritten name and date information at the tops of the admission forms because that process was computerized and that was not the practice. Lewis "did it by hand." (Tr. 44-45.) Sometimes the documents were signed on a date after the actual admission if there was a backlog. After the documents were executed, Lewis turned the packet over to the admission coordinator.

{¶28} Lewis recalled that Nicholas was admitted for rehabilitation and that Nicholas became a resident shortly before his mother Rose was admitted. The signatures in Nicholas's packet contained typewritten names for Nicholas and Rose below the signature lines. In some cases, the signatures were on the signature line for Nicholas and others above the name for Rose.

{¶29} In spite of the fact that the packet indicated Rose signed the documents, Lewis's testimony was somewhat ambiguous. At one point she testified that she did not know whether Rose was present when the admission packet for Nicholas was signed and she did not recall obtaining Rose's signature. At other times, Lewis's responses indicated that Rose signed the documents.

Q      And we see the signature purportedly to be of Rose Giancola; right?

A      Yes.

* * *

Q      Now, we know from [p]age 1 * * * [of the admission packet] that Rose
        Giancola signed the admission paperwork; right?

A      Correct.

Q      And your review of the Arbitration Agreement on [p]age 15 confirms that
        Rose Giancola signed the Arbitration Agreement; right?

A      Yes.

(Tr. 46.)

{¶30} In response to the question of whether Lewis "had any specific recollection of Rose Giancola in explaining the paper work [for Nicholas] to Rose Giancola" during the admission, Lewis responded "I don't remember. I know they were there [patients at the facility] at the same time and I know she was his — she was his [power of attorney], so that would be who I would have spoken to." (Tr. 48-49.) Yet then Lewis said she had no personal recollection of speaking with the admission coordinator about who should sign the admission documents for Nicholas or that Rose held a health care power of attorney for Nicholas though that would be the standard procedure. Lewis said several times that she had no independent recollection of explaining the documents to Nicholas or Rose but could explain the usual admission process.

{¶31} Typically, Lewis would read the first paragraph of the Arbitration Agreement to the resident and explain the rest:

> Then when it said binding nature of arbitration, I would go through and explain it, that meant that we were able to go in front of a magistrate, they had that choice in order to solve any issues or anything like that that were — that they had with us as a nursing home facility, whether it would be financial or medical.
>
> In that nature I would just go through each of them, like, who conduct[s] it? A magistrate would be conducting it as opposed to us going in front of maybe a judge or anything like that or having attorneys. The magistrate would be like the middle person is how I was explained. [sic]

(Tr. 67.)

{¶32} Lewis would read verbatim any portions that she was unable to summarize or did not understand. Generally, Lewis was not familiar with how the arbitration process worked or

what rules applied but was aware that arbitration was in lieu of a constitutional right to a jury trial. Lewis also explained to the resident or representative that they did not have to sign the arbitration agreement. If there were questions about the agreement, Lewis would have an administrator handle them.

{¶33} Kullman reviewed signatures contained in the admission packet for Nicholas and the admission packet for Rose. Kullman concluded that the signatures on the documents for Nicholas's admission "were to a reasonable degree of scientific certainty, probably written by the same person." Kullman also determined that it was "highly probable" that the signatures on Nicholas's admission documents, including the arbitration agreement, and the signature on the documents submitted from Rose's admission "were, to a reasonable degree of scientific certainty, not written by the same person."

{¶34} Kolosai does not contest the authenticity of Rose's signature on her own admission documents. Additional evidence supporting the finding that Nicholas signed the Arbitration Agreement is the deposition testimony of Nathan Giancola, the nephew of Nicholas, who said that Nicholas would have been making his own medical care decisions at the time of his admission.

{¶35} Our review of the facts in this case includes a comparison of the signatures on the documents. The October 24, 2011 Admission Agreement for Nicholas contains the typewritten names of Nicholas as the resident and Rose as the representative. The signature line above the typewritten name of Nicholas at the end of the agreement is blank. The signature line above the typewritten name of Rose contains a barely legible signature that includes a middle initial.

Below the signatures is the signature of Lewis, the Walton Manor employee who conducted the admission process, and a signing date of October 28, 2011.

{¶36} The Arbitration Agreement also contains the typewritten date of October 24, 2011 and name of Nicholas as resident. The same signature appears above the name of Nicholas. There is no signature above the name of Rose. This document was also signed by Lewis and dated October 28, 2011.

{¶37} A document entitled "Authorization & Acknowledgment of Receipt" contains no signature above the printed name of Nicholas. The signature line for Rose is similar to the signatures on the other documents and is also signed by Lewis on October 28, 2011.

{¶38} Additional documents contain what appears to be the same signature. A Medicare secondary payer form lists Nicholas as the resident. The single signature line contains the printed name "Rose Giancola," but the signature below it matches the signatures throughout the package. Though the signatures in Nicholas' packet are sometimes over his name and sometimes over Rose's name, the signatures visibly appear to be consistent in form.

{¶39} Rose's admission packet is dated November 20, 2011. Rose is listed as the resident and Nicholas as the representative. The signature of Rose's name is discernibly larger and more legible than the Nicholas packet. The facility representative that conducted the admission for Rose was Dan Burgett on November 21, 2011.

{¶40} Based on our review of the record, this court does not find that the "finder of fact clearly lost its way" in this case. *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-20. The trial court's judgment is supported by the manifest weight of the evidence. The first assigned error lacks merit.

**B.     Expert Affidavit**

{¶41} Kolosai next contends that the trial court's consideration of Kullman's expert affidavit proffered with the renewed motion for reconsideration on remand was in error.   We disagree.

{¶42}   Kolosai asserts that appellees produced the affidavit and expert opinion at the last hour, denying them the opportunity to conduct discovery of Kullman's opinion, securing a rebuttal expert, and cross-examining Kullman.   Kolosai also argues that Kullman's opinion did not comply with applicable evidentiary rules and constituted biased, paid evidence.

{¶43} Rose died on December 27, 2013. *Kolosai I* was remanded on October 9, 2014. The renewed motion was filed on December 12, 2014, based on obtaining Rose's signature from her admission file and the expert report of Kullman.   The trial court's  judgment entry returning the case to the regular docket was entered on December 15, 2014.   Kolosai replied on December 19, 2014. On February 27, 2015, appellees filed the Kullman affidavit in further support of its filing.   The hearing on the renewed motion was held on March 2, 2015. Supplemental post-hearing briefs were also entertained.   On March 30, 2015, the trial court determined that Kolosai failed to rebut appellees' evidence that Nicholas signed the agreement.

{¶44}   Evid.R. 702 provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

**{¶45}** Further,

"'The determination of whether a witness possesses the qualifications necessary to allow expert testimony lies within the sound discretion of the trial court. [Thus], the qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court.'"

*Georgetown of the Highlands Condominium Owners' Assn. v. Nsong*, 8th Dist. Cuyahoga No. 106025, 2018-Ohio-1966, ¶ 56, quoting *State v. Wages*, 87 Ohio App.3d 780, 786, 623 N.E.2d 193 (8th Dist.1993). An abuse of discretion standard "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶46}** Kullman's curriculum vitae is extensive, reflecting training with the Michigan State Police, study at the Federal Bureau of Investigation Training Academy, and the U.S. Secret Service Laboratory. Kullman provided expert testimony comparing signatures on documents more than 225 times.

**{¶47}** There is no evidence in the record that Kolosai attempted to depose Kullman or requested an extension of time to secure a rebuttal expert. While the Kullman affidavit and curriculum vitae information were added to the record a few days prior to the hearing, the Kullman opinion attached to the renewed motion to stay was filed more than three months prior to the hearing.

**{¶48}** The Kullman opinion is on letterhead listing the company's name, Speckin Forensic Laboratories, addresses in Michigan and Florida, contact numbers, and website. The documents that Kullman relied on in arriving at his opinion are identified. Kullman described

the method of examination and factors that lead to his conclusions. The ASTM Designation standards used to describe forensic document examinations along with the corresponding definitions are also listed. Clearly, Kolosai had prior notice of Kullman's identity and opinion.

{¶49} As Kolosai briefly alluded to a *Daubert* challenge,

> Expert witnesses in the field of handwriting analysis generally offer their opinions to "a reasonable degree of *scientific* certainty." (Emphasis added.) *E.g.*, *State v. Loza*, 71 Ohio St.3d 61, 77, 641 N.E.2d 1082 (1994); *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 96. However, under Evid.R. 702, experts are not required to use any particular "magic words." *Lucsik v. Kosdrosky*, 2017-Ohio-96, 79 N.E.3d 1284, ¶ 15. Rather, an expert's opinion is admissible so long as it provides evidence of more than mere possibility or speculation. *Id.* (expert testimony admissible even though not offered to "a reasonable degree of medical certainty"); *Butler v. Minton*, 6th Dist. Erie No. E-05-061, 2006-Ohio-4800, ¶ 17 (same); *see also Johnson v. Memphis Light Gas & Water Div.*, 695 Fed.Appx. 131, 136-137 (6th Cir.2017) (same result under Federal Rules of Evidence).

*State v. Beasley*, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 162.

{¶50} In this case, the Kullman opinion contained the proper terminology. As the trial court observed, Kolosai supplied no evidence rebutting the Kullman opinion or the documents submitted during the hearing containing the signatures from both admission packets. We do not find that the trial court abused its discretion.

{¶51} The second assigned error is overruled.

## C.     Reversal of Prior Finding

{¶52} As the third and final assigned error, Kolosai advances the procedural argument that the trial court could not effectively vacate the prior judgment that Rose signed the agreement without apparent authority unless that judgment was vacated by a Civ.R. 60(B) motion. This argument also fails.

**{¶53}** As the Ohio Supreme Court explained,

Rather, "'[u]pon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.'" *State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293, ¶ 11, quoting *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982). In this case, error occurred when the trial court granted the motion to stay arbitration on the basis of Giancola's mother's apparent authority to bind her son. By ordering a remand for "further proceedings," the decision in *Kolosai I* returned the parties to the same position they were in prior to the error, and nothing precluded Walton Manor from reasserting its argument that Giancola had signed the arbitration agreement or prevented the trial court from permitting the introduction of new evidence to support that assertion.

*Kolosai III* at ¶ 21.

## IV.    Conclusion

**{¶54}** The trial court's judgment is affirmed. The case is remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS IN JUDGMENT ONLY;
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY